## Marseilles *versus* Kenton's Executors.

1. L. K. promised in writing to pay $1000 to P. M. ("for which he has advanced on 24 dozen of seal-skin caps for E. B., which are now in my hands) and to be paid on or before the 9th November, 1838." On the 9th November, 1844, L. K. the promissor, without any new consideration, endorsed on the writing, " I agree to extend the time of limitation until Tuesday, November 12, 1844, and that A. shall, by that time, make the terms of settlement. The terms of settlement were not fixed by A. during the time limited ; it was *held*, that the day on which the written engagement was received, was to be included in the six years, and that suit against the promissor was barred at the time of the endorsement: that though after the cause of action was barred, the promissor, without any new consideration being given, disclaimed an intention to plead the statute, there was nothing in this, or in the endorsement, which precluded his executors from pleading it, or amounting to an acknowledgment of the debt from which a new promise to pay, after the three days, would be inferred.

2. The reference was revoked by the death of the promissor, before the referee acted, and the executors of the promissor were not bound to continue the reference.

3. A single special transaction between two persons who happen to be merchants, is not on that account within the exception in the statute of accounts concerning the trade of merchandise : and no evidence having been given to the jury that the promissor was the plaintiff's factor and agent in the trans-

.[Marseilles *v.* Kenton's Executors.]

action, the court was right in directing a verdict in the case, so far as that was concerned, to be rendered for the defendants, the executors of the promissor.

4. A court may properly postpone their decision on a demurrer till after the issues in fact are determined by the jury. Such an exercise of discretion is not the subject of revision in this court.

ERROR to the District Court, *Philadelphia.*

This was an action by Peter Marseilles *v.* Kenton's Executors, on a promissory note.

The note upon which the action was brought had no date to it; it was as follows:—

"I promise to pay Peter Marseilles $1000 [for which he has advanced on twenty-four dozen seal-skin caps for E. Brown, which *is* in my hands] and to be paid on or before the 9th of November, 1838. Signed LEVI KENTON."

On the 9th November, 1844, Kenton endorsed upon the note, viz:—

"I agree to extend the time of limitation until Tuesday, November 12, 1844, and that Isaac M. Ashton shall by that time make the terms of settlement. Signed LEVI KENTON."

On the same day Kenton went to Ashton and told him of this, and obtained his consent to serve as referee, and the parties and the referee had a meeting, and met afterwards, and after November 12, by adjournment; in all four times.

The last meeting was held at Kenton's hat store, in Market street, for the referee to find out how many caps Kenton had not sold.

They again adjourned, and before another meeting was had, and before any award was made, Kenton died. He died in January, 1845.

After Kenton's death the plaintiff offered to go on before the referee, and abide by his report; the executors refused.

This action was brought on 5th December, 1846, against the executors.

The pleadings *first* filed were as follows:—

The *narr.* contained nine common counts in *assumpsit* (including an *insimul computassent* count, which was withdrawn May 13, 1848); one special and one general count on the note, and a count against the executors personally; no evidence was given against the executors on this count. The pleas to this *narr.* were: 1. *Non assumpsit.* 2. *Non assumpsit infra sex annos.* 3. Payment. 5. *Non assumpsit* as to executors; and 6. *Actio non accrevit infra sex annos.*

Plaintiff's replications to defendants' first and third pleas were *similiter* and issues. To defendants' second and fourth pleas, traverse. Defendants rejoin *similiter* and issues.

[Marseilles *v.* Kenton's Executors.]

Upon these pleas the case was tried before Judge SHARSWOOD, January 11, 1848, and on proof of the note and the plaintiff's other facts, the Judge charged the jury that the plaintiff's claim was barred by the statute of limitations, and they must render a verdict for the *defendants.* The jury found a verdict for *the plaintiff* for $1546, and a *new trial* was granted, March 14, 1848.

2. On the 12th of April, 1848, the plaintiff obtained leave, and on April 15, 1848, withdrew his replication to defendant's plea of the statute of limitations, and filed an additional replication to it, to wit: That defendant was his factor, to which the defendant demurred, April 19, 1848.

Plaintiff joined in demurrer, May 30, 1848, and took a rule, June 17, 1848, which was made absolute, June 24, 1848, to withdraw this replication. October 16, 1848, plaintiff renewed and filed his replication of *assumpsit infra sex annos,* to the defendants' plea of *non assumpsit infra sex annos.*

3. Additional count added, which was subsequently withdrawn.

4. June 24, 1848, plaintiff filed *a second additional count: That the defendant was plaintiff's factor,* &c. July 16, 1848, the defendants plead, viz.:

*Non assumpsit.* 2. *Non assumpsit infra sex annos.* 3. *Actio non accrevit infra sex anos.*

September 4, 1848, rule on defendants to strike off his second and third pleas. September 16, 1848, rule discharged. September 28, 1848, plaintiff replied, viz.:—

1. As to defendant's first plea, issues, &c. 2. To the second and third pleas he demurred.

December 21, 1848, demurrer struck from the argument list. January 24, 1849, a jury was called before STROUD, J., and the plaintiff proved, 1. The offer and the defendant's refusal to proceed before the referee, and submit to his decision.

2. Defendant's will and letters testamentary. 3. The note and its endorsement, and that Kenton had repeatedly acknowledged before the referee, after the 12th of November, 1844, his determination not to take any advantage of the limitation. That Kenton died before the reference was concluded, and that the referee made no report. It was alleged on part of plaintiff that it was contended that Kenton was plaintiff's agent: that he had sold some of the caps, and still had possession of the remainder.

STROUD, J., charged the jury, "That the *merchant and factor's*" count last filed, and the pleadings under it, had nothing to do with the case before them; that the only question before them was a question of law upon the first declaration; and that on the whole evidence the plaintiff's claim was barred by the

[*Marseilles v.* Kenton's Executors.]

statute of limitations, and that their verdict must be rendered for the defendant. Whereupon a verdict was rendered for the defendant.

On the 22d of March, 1851, the demurrer was restored to the argument list from which it had been struck, to be disposed of after the jury trial. On the argument of the demurrer, the court entered judgment on the demurrer for the plaintiff. After this, viz. :—

April 5, 1851, cross rules were entered for judgment for the plaintiff, and also for judgment for the defendant on the whole record.

June 2, 1851, the rule for judgment for plaintiff on the whole record was discharged, and judgment was entered for the defendant.

The assignments of error were, that the judge erred in his charge to the jury :—

1. In directing them that the pleadings upon the last count or *narr.* had nothing to do with the case.

2. That the whole case before them was a mere question of law, and that on the whole evidence the plaintiff's claim was barred by the limitation; whereas the question whether Kenton borrowed $1000 of plaintiff, or was his agent, and whether Kenton by his declarations and acts before and after the six years were expired, did not disclaim the statute, so that it never did attach to the claim, were matters of fact for the jury.

3. The court erred in striking the demurrer off the argument list, and in postponing a decision upon the demurrer until after the trial by the jury. The demurrer should have been decided first; the previous pleadings were superseded by the last *narr.*; and the demurrer, and a decision upon the demurrer involved all the merits of the case, and there was no occasion for a jury trial.

4. The court erred in the following particulars :—1. In rendering judgment for the defendant against the facts and the law, and in the face of the judgment before them entered for the plaintiff on the demurrer. 2. In not entering judgment for the plaintiff upon the whole record. 3. In entering judgment for the defendant, pending the issue on the plea of *non assumpsit*, to the last count; for if issues in fact are to be first tried, this was an issue of fact, and should also have been tried before deciding the demurrer. 4. And also in discharging plaintiff's rule for judgment on the whole record, as no issues under the first *narr.*, or verdict thereon, could oust the plaintiff of his right to judgment on the demurrer, which involved the simple question whether a factor or servant can plead the statute of limitations, a plea which is expressly excepted by the statute, and which had been demurred to, and judgment had been already entered thereon for the plaintiff, and then was in full force.

[Marseilles *v.* Kenton's Executors.]

The case was argued by *F. Brewster* for the plaintiff.—The points of his argument were : 1. The loan was made by plaintiff to Kenton, and not to Brown.   2. The limitation was waived and never attached.   3. This was a question for the jury.   4. The executors had no right to plead the statute of limitations.   5. Nothing which has occurred can interfere with plaintiff's right to judgment on the demurrer.

*T. I. Wharton* and *P. McCall* for defendants in error.—The plaintiff, Marseilles, in 1838, lent Kenton, the testator, $1000, to be repaid on or before the 9th of November, 1838.

Between the time of the loan, and 1844, various transactions, it is believed, took place between Marseilles and Kenton, the circumstances of which, and the state of accounts between these parties, are unfortunately unknown, in consequence of the death of Mr. Kenton.

About the 9th of November, 1844, Kenton made the following endorsement on the note held by Marseilles :—

"I agree to extend the time of limitation until Tuesday, November 12, 1844, *and that Isaac M. Ashton shall, by that time, make the terms of settlement.*"

The obvious meaning of which is that Kenton agreed to extend the time of limitation to the 12th Nov., *provided* that the accounts between the *parties* were settled by that time by Isaac M. Ashton. The settlement was not then made by Ashton.   Kenton died in the early part of January, 1845.

This action was not brought until the 5th of December, 1846, more than eight years after the alleged cause of action ; and more than two years after the time fixed by Mr. Kenton as the utmost limit of the period beyond which he would not "extend the time of limitation."

The declaration contained, originally, *twelve* counts ; to which the defendant pleaded the usual pleas of *non assumpsit*, payment, and the statute of limitations ; and upon these pleas the case was tried in January, 1848, before Judge SHARSWOOD, who charged that the statute of limitations barred the action.   The jury disregarded the charge, and found for the plaintiff; and a new trial was, of course, granted.

Then followed rules for additional replications, and additional counts, afterwards withdrawn, motions to strike off pleas, demurrers, &c.

All that is material is to state upon what pleadings the cause was finally tried.

1st. The plaintiff's original counts (excepting the *insimul computassent*), and an additional count against the defendant's testator, charging him as the plaintiff's factor, upon a promise to render

[Marseilles *v.* Kenton's Executors.]

an account of certain merchandise, &c., with an averment that the said Kenton did not, &c.

2d. To these counts the pleas were—1. *Non assumpsit.* 2. *Non assumpsit infra sex annos.* 3. *Actio non accrevit infra sex annos.*

3d. To the 1st plea the plaintiff "*replied*" by putting "*himself upon the country.*"

To the 2d and 3d pleas to the additional count he *demurred* generally, and the defendant joined in demurrer.

On the 21*st of December,* 1848, *this demurrer was struck off the argument list.* There was then only *one issue of fact* to be tried, viz.: *non assumpsit,* to the additional count, or in substance a traverse of the averment in that count that the testator was the plaintiff's factor or servant, and made a promise to him to render an account.

Upon these pleadings the case came on for trial before Judge STROUD, on the 24th of January, 1849.

It is to be remarked, that *no evidence whatever* was given on the part of the plaintiff that *Mr. Kenton in this instance, or in any other, acted as the plaintiff's factor or agent, or was employed by him in that character or capacity.* Nor was there any evidence from which the jury could infer such an undertaking, or any promise to render an account.

The case stood nakedly upon an alleged promise to pay the plaintiff a certain sum of money, to which promise the statute of limitations presented a flat bar.

And such was the opinion of the judge, under whose directions the jury found a verdict for the defendant.

Afterwards, the demurrer of the plaintiff to the pleas of the statute of limitations having been restored to the argument list, the question of the sufficiency of those pleas was argued, and the court gave judgment upon the demurrer for the plaintiff.

The record then stood thus:—Judgment for the *defendant* upon all the pleas to the original *narr.,* and upon the first plea to the new count, viz., *non assumpsit.*

Judgment for the *plaintiff* upon the demurrer to the 2d and 3d pleas to the new count, viz., the statute of limitations.

After argument, the court gave judgment for the defendant upon the whole record, upon the ground that the issue upon *non assumpsit* having been found for the *defendant,* the other pleas became immaterial and unimportant, and consequently the judgment upon the demurrer fell with them.

*Meredith,* in reply.

The opinion of the court was delivered January 21st, 1852,

[Marseilles *v.* Kenton's Executors.]

LEWIS, J.—The action was brought upon an instrument of writing, without date, of which the following is a copy :—

"I promise to pay Peter Marseilles $1000 (for which he has advanced on twenty-four dozen seal-skin caps for E. Brown, which is in my hands), and to be paid on or before the ·9th November, 1838.                    LEVI KENTON."

On the 9th November, 1844, Levi Kenton made the following endorsement on the instrument :—

"I agree to extend the time of limitation until Monday, November 12, 1844, and that Isaac M. Ashton shall, by that time, make the terms of settlement.          LEVI KENTON."

The parties met with Mr. Ashton for the purpose of settling the matter in dispute; but nothing was done by him, either within the time prescribed or afterwards. There was evidence of a meeting, after the 12th November, 1844, at which time Mr. Kenton stated that the endorsement was unnecessary, and that he "did not want to take any advantage of the limitation;" but, according to the testimony of the witness who testified to these facts, Kenton "always denied owing the plaintiff the money."

This record, with its numerous pleas, replications, demurrers, and issues, in *fact* and in *law*, is fruitful of suggestions of interest to those who are partial to the science of pleading. Passing over these for the present, and arriving at the facts of the case, we proceed to inquire whether the plaintiff can, in any form of pleading, surmount the difficulty presented by the plea of the statute of limitations.

The instrument on which the action was brought was payable on the 9th November, 1838; and, according to the rule which, in cases of this kind, requires the day on which the cause of action accrued to be *included* in the calculation of time, under the statute of limitations, the action was barred on the 9th November, 1844: King *v.* Adderly, 5 *Rep.*; Prestrey *v.* Williams, 15 *Mass.* 193. It was on this day, after the action was barred, that the endorsement was made extending the limitation for the period of three days, *within which time* Isaac M. Ashton was to make the terms· of settlement. These were not made by Ashton within the time limited by the endorsement; and it follows that as no action was brought within the extended period, there was nothing in the endorsement which can preclude the defendants from their defence under the statute. To construe this endorsement, so cautiously restricted to an extension of the limitation for the period of *three days only*, into a waiver of the benefit of the statute for *another period of six years*, would be a palpable perversion of the meaning of the parties. The statute of limitations is founded in sound policy, and, when applied to the protection of a decedent's estate

from stale claims, is conducive not only to the peace and repose of the community, but, in most instances, to the justice of the case. So far from an executor deserving censure for pleading it, he is under a moral obligation to do so in all cases, except where he is perfectly satisfied of the justice of the claim. And instead of resorting to the reprehensible evasions which distinguished the early decisions on the statute, and which almost abrogated its provisions, the courts of the present time proceed under a more enlightened sense of duty. It is now to be construed, like other statutes, according to its true intent and meaning.

The agreement to refer the dispute to Mr. Ashton was limited to three days; but if extended by parol, then, like every other submission to an arbitrator, it was revocable at the pleasure of either party, at any time before a decision was pronounced. If an award be not made in the lifetime of the parties, the death of either is itself a revocation of the power. In this case, all authority conferred upon Mr. Ashton was revoked by the death of Mr. Kenton. So that we perceive nothing whatever in the reference to Mr. Ashton which can take this case out of the statute.

But Mr. Kenton, *after* the 12th November, 1844, when endeavouring to procure a settlement of the dispute, by means of the reference to Mr. Ashton, declared that he "did not want to take advantage of the statute." What is there in this which is to deprive his executors of a defence that the law has wisely provided? He might not desire to avail himself of the statute if he could have an end to the controversy in his lifetime. Understanding the transaction, and knowing the facts necessary for his defence, he might see no necessity to resort to the protection of the statute, if he could be present himself at the settlement. But the case assumes a new aspect entirely, when his executors, without any knowledge of the case, are compelled to meet the claim, after his death, and to litigate it with one who has all the advantages of a perfect acquaintance with the facts. But what has the plaintiff to do with this expression of the state of Mr. Kenton's mind? It is not pretended that there was any *contract*, upon a sufficient consideration, by which Mr. Kenton was precluded from pleading the statute. Disclaiming an intention to plead the statute is no waiver of its protection, and the party may change his intention whenever he discovers that his interest requires it. Even a promise not to plead the statute of limitations, made without consideration, is not sufficient to take a debt out of the statute.

Taking the written endorsement, and the parol declarations respecting the statute, either *separately* or *together*, there is nothing in them amounting to an acknowledgment of the debt, from which a new promise to pay may be inferred.

But the words in brackets ("for which he has advanced on 24 dozen seal-skin caps in my hands") are relied upon as bringing

the case within the exception in favor of "such *accounts* as concern the *trade of merchandise* between *merchant* and *merchant,* their *factors* or *servants.*" These words in the statute of limitations of the State of Maine, have received a construction in the Supreme Court of the United States, which, in our opinion, accords with their true meaning. The language of Chief Justice MARSHALL is applicable to the case before us. "This contract does not change its character because the parties happen to be *merchants.* It is a *special contract,* whereby a compensation is stipulated for a service to be performed, and not an *account* concerning *the trade of merchandise.* It is no more an "*account*" and no more concerned with "*the trade of merchandise*" than a bill of exchange, or a contract for the rent of a house, or the hire of a carriage, or any other *single transaction* which might take place between individuals who happened to be merchants. An entry of it on the books of either would not change its nature and convert it from an insulated transaction between individuals into an *account* concerning the *trade of merchandise* between merchant and merchant. This must depend on the nature and character of the transaction, and not on the book in which either party may choose to enter a memorandum or statement of it." Applying these observations to the case before us, it is plain that the loan of $1000, even if secured by a deposit of caps, was "an insulated transaction between individuals"—"a special contract" in writing—a "single transaction" between parties who may or may not be merchants, and not "an *account,*" concerning "the *trade of merchandise,* between *merchant* and *merchant,* their factors or servants." There is, therefore, nothing in the nature of this transaction which brings it within the exception in favor of "*merchants' accounts,*" so as to save it from the operation of the statute.

It is plain that Kenton became personally bound to Marseilles for the payment of the $1000, on the 9th of November, 1838, whether the caps deposited with him were sufficient to indemnify him or not. The instrument shows that he became bound for an advance made for the benefit of E. Brown, the owner of the caps, and that they were left "in his hands" to indemnify him from loss by reason of the liability incurred. After payment of the $1000 out of the proceeds of the caps, he would be accountable to Mr. Brown for the remaining caps. And under no circumstances could he be charged in an action of account render by the plaintiff, for a greater amount than the sum of $1000, the amount of the plaintiff's demand. And for this sum, it has been seen, the defendant is personally liable to the plaintiff, by the terms of the special contract, independent of any account of the caps. That the defendant's testator had a lien on the caps, accompanied with possession, to secure him for the liability to the plaintiff, is clear. How can the plaintiff have a lien on the same goods, without pos-

[Marseilles v. Kenton's Executors.]

session, for the same debt? If the plaintiff might take the goods out of Kenton's possession, the latter would thereby be deprived of the very security which induced him to bind himself personally for the debt of Brown. The contract is not drawn with much skill, but the intention is, we think, sufficiently clear. "*For* which he has advanced on twenty-four dozen seal-skin caps for E. Brown, which is in my hands," following as they do the words by which the testator promises to pay the plaintiff $1000, may be construed to mean that the plaintiff advanced the money for E. Brown on the personal security of the testator, and that the latter became thus bound on the security of the caps left "in his hands."

But conceding that the plaintiff had a claim on the caps as a collateral security for the debt, this would not preserve the debt from the operation of the statute. It is true that if a simple contract debt were secured by a mortgage, it has been thought that the mortgage might be resorted to after the debt was barred, because a mortgage is a *legal title in form*, and the debtor is compelled to go into equity to redeem. But even this has been doubted by high authority. So, it is conceded, that when the owner of the debt is *in possession of goods* pledged for its payment, he may hold them until his debt be paid, because, although his *remedy* for his debt by action is taken away, the debt itself is not discharged. But in the case before us the plaintiff has no possession of the goods, and can resort to no remedy but his *remedy* by *action* for the debt, or on a supposed contract for a lien on the caps; and this, it has been seen, is barred by the statute. The learned judge of the District Court was therefore correct in declaring to the jury, "that on the whole evidence the claim is barred by the statute, and the verdict must be for the defendants." If this was correct, it can scarcely be material to inquire what else he said tending to deprive the plaintiff of a verdict to which he was not entitled. But the instruction that "the merchant and factor's count had nothing to do with this case," is but a different form of expression from that embodied in the language which immediately followed. We understand the judge to mean that the plaintiff had given no evidence to sustain "the merchant and factor's count;" and in this, for the reasons already assigned, we think he was correct. The verdict for the defendants, on the plea of *non assumpsit* to that count, was properly rendered, in accordance with the law and the evidence. But the plaintiff, having afterwards obtained judgment on his demurrers to two pleas of the statute of limitations (pleaded to "the merchant and factor's count"), now complains that the court below subsequently rendered a judgment for the defendant on the whole record. In this the court below was indubitably correct. The statute which gave the defendant the privilege of pleading several pleas in bar of the action, entitles him to judgment on the whole record if he succeed in any one of them.

[Marseilles *v.* Kenton's Executors.]

After a legal verdict had been rendered finding that the claim under the "merchant and factor's count" had no foundation whatever, it was not material to inquire whether it was barred by the statute or not. Indeed, except for the purpose of determining questions of costs, where pleadings are the subject of compensation, or where separate costs have accrued on each issue, a decision upon a demurrer to the statute of limitations, after a verdict for the defendant upon a sufficient plea in bar, is but dealing with an abstraction of no practical importance in the final decision of the cause.

The court, in our opinion, properly exercised its discretion in postponing the determination of the issues in *law* until the issues in *fact* were found by the jury. Such a course tends to promote accuracy in pleading, and prevents frivolous demurrers. It is also the means of saving time, because the finding of any one of the issues in fact for the defendant, as already remarked, disposes of the whole case. The action of the court, however, affected but the *order* of *proceeding*, not the *rights* of the *parties*, and was an exercise of discretion which is not the subject of revision here.

The judgment for the defendants on the whole record ought to be affirmed.

Coulter, J., dissented.                    Judgment affirmed.