## Fayette County v. Aubrey et al.

*Clark W. Martin*, county solicitor, and *J. K. Spurgeon*, for plaintiff.

*W. Brown Higbee* and *Eugene C. Sloan*, for defendants.

DUMBAULD, J., July 3, 1939.—From January 1932, to January 1936, defendant, Thomas R. Aubrey was treasurer of Fayette County.

During that time Maryland Casualty Company, the other defendant, was his surety. Their joint and several bond, executed on January 25, 1932, is conditioned that the said Thomas R. Aubrey shall faithfully perform the duties of his office, shall justly and truly account for all

moneys that may come into his hands on behalf of the County of Fayette, and pay over to his successor in office any balance of money belonging to said county remaining in his hands at the expiration of his term of office, as required by law.

As such treasurer, Thomas R. Aubrey was the receiver and collector of county, city, borough, township and poor taxes, which were returned as delinquent for the years 1931, 1932, 1933, and 1934, and was likewise the receiver and collector of all such taxes which were returned for the year 1930, and earlier years, then unpaid.

From December 1, 1933, to January 4, 1936, inclusive, Thomas R. Aubrey collected such delinquent taxes, in the sum of $713,543.66. To and including November 30, 1933, he accounted to the fiscal officers of Fayette County for 100 percent of the delinquent taxes so collected. From December 1, 1933, to the end of his term, on January 4, 1936, he accounted for such part of these delinquent taxes as was due the county, but retained and appropriated to his own use two percent of the amount collected for the cities, boroughs and townships located within the county. Two percent of the amount collected, $14,217.83, was retained by the treasurer in the manner pointed out.

From December 1, 1933, to the end of his term, he failed and refused to submit to the Controller of Fayette County any statement showing the amount of delinquent taxes paid over to the several municipalities other than the county and failed and refused to submit to the controller, for countersignature, any of the receipts evidencing payment of these taxes to different municipalities. In such payment to the municipalities other than the county, he used a differently prepared and differently colored receipt from those submitted to the controller, as evidencing the receipt of county funds by the treasurer.

The controller's reports, including the treasurer's accounts for the month of December 1933, and all the months of 1934 and 1935 and the first three days of January 1936, so far as these delinquent taxes are concerned,

contain no reference to this two percent, and there was no audit by the county controller of these items.

At the end of his term, the treasurer failed to pay over to his successor the two percent thus retained and appropriated by him to his own use and has since failed and refused to make payment thereof.

On November 15, 1938, the County of Fayette instituted this action in assumpsit, naming Thomas R. Aubrey and Maryland Casualty Company jointly as defendants. After the joint motion of both defendants to abate the action for want of jurisdiction was overruled, defendants jointly presented an affidavit of defense raising questions of law as follows:

"1. The action is an attempt to collaterally attack the various controller's reports pleaded in the statement of claim.

"2. The General County Law creates an exclusive statutory proceding for the determination of indebtedness from or to an officer and the county, as well as its collection, and the present action is a claim which is included in that exclusive statutory proceeding.

"3. The jurisdiction created under The General County Law is exclusive and precludes a resort to the present action of assumpsit."

Under the facts, as stated in plaintiff's statement of claim, we have no doubt of the right of the county to an adjudication of the liability of its former treasurer to account for the money retained by him and appropriated to his own use. The money belongs to the county. Contrary to the plain provisions of the law applicable, he withheld the reports required to be made to the controller showing his receipt of the items that make up this sum. Contrary to the Constitution of Pennsylvania, the applicable statute law and the decisions of the courts, he retained and still retains this money. His failure in all these respects clearly fixes the liabilty of his surety.

That there was not and is not any legal justification for the retention by the treasurer of this money is abundantly

demonstrated by the opinion of Cottom, P. J., in the case of The Controller's Twenty-sixth Annual Report, 1 Fayette L. J. 38. Therein our learned president judge cites and collates the authorities, and clearly demonstrates the futility of the treasurer's claim that this money belongs to him. Under such circumstances the courts will not be astute to find reasons to enable a public official to retain money in violation of the trust imposed in him.

Our question, therefore, is to determine the applicability of an action in assumpsit as the medium for asserting the legal liability of this treasurer and his surety.

Two comparatively recent cases in our Supreme Court discuss facts in many respects similar to the facts of this case. Lackawanna County's Appeals, 296 Pa. 271, a case practically a counterpart of this case as to facts, points the way to a proceeding by appeal nunc pro tunc from the controller's reports.

Paragraph 1 of the syllabus uses this expressive language:

"Where a county official appropriates to his own use money belonging to the county, and does not make a report thereof to the county controller, as required by section 37 of the Act of April 15, 1834, P. L. 537, 543, such conduct is a fraud upon the public, entitling the county, upon proper application in due course, to appeal nunc pro tunc from the controller's report upon the accounts of such officer."

In discussing the case of Zeigler's Petition, 207 Pa. 131, and York County v. Thompson, 212 Pa. 561, Mr. Justice Simpson says (p. 277):

". . . it was alleged that a custom existed which authorized the treasurer to keep the public moneys there being claimed by the county, and that there was common knowledge of the fact that he was doing so. These allegations were given no weight there, and can be given none here. It should not be necessary to repeat that all such arguments must be unavailing in a court of justice, *which*

*will never permit a public official to take and keep the funds committed to his care, if there is any legal way to prevent it."* (Italics supplied).

A careful reading of this opinion makes it proper to say that, upon presentation of the same facts that are asserted in plaintiff's statement of claim in a petition for an appeal from the controller's reports nunc pro tunc, such appeal will have to be allowed.

O'Gara et al., County Commrs., v. Phillips, 297 Pa. 526, is a case involving also the accounts of the county treasurer, who, under exactly similar circumstances, undertook to retain commissions on taxes collected from unseated lands. In this case, decided on September 30, 1929, it was plainly determined that, under the Act of April 12, 1923, P. L. 62, giving the county treasurer a fixed compensation, the treasurer is not allowed commissions for collecting taxes on unseated lands, and claim for such commissions should be disallowed by the controller.

As noted, this case was decided before the beginning of treasurer Aubrey's term and before he began to retain commissions. The law so fixed and stated by our highest appellate court was and is binding upon the treasurer and his surety. The law was well settled during the whole term of treasurer Aubrey.

Bearing upon the form of action taken to recover money so retained, paragraph 9 of the syllabus in the case of O'Gara et al., County Commrs., v. Phillips says (p. 527) :

"In such case there is no audit of that particular fund or account, *and the county may sue to recover the money due,* or it may appeal from the controller's report nunc pro tunc". (Italics supplied.)

No doubt this paragraph in the syllabus is based on the language found in the opinion of Mr. Justice (now Chief Justice) Kephart on page 532, as follows:

"The report of a controller, however, is not conclusive as to assets which the accounting officer conceals or of which no return is made or which are not officially

brought to the attention of the auditing officer. In such cases, there is no audit of that particular fund or account, and the county may sue to recover the money due, or it may appeal from the controller's report nunc pro tunc: Lackawanna County's Appeal, In re Watkin's Report, 296 Pa. 271."

Relying upon this language, plainly obiter dictum, plaintiff in our case joined the surety, against which no action other than assumpsit is applicable, with the defaulting officer in this action of assumpsit.

At the time of oral argument, the writer of this opinion was convinced that plaintiff, depending upon this statement, had the right to choose which of the two forms of proceeding it would use in the effort to collect this money. This conception was based on the thought that, having directly stated that the county, under such circumstances could sue for the money, even though that statement was made in a case where the other form of procedure was adopted, if and when that right was asserted in a case directly involving that question, the Supreme Court would adhere to the rule so stated.

Subsequent to the oral argument, our attention was called to the case of Unangst's Appeal, 333 Pa. 489, 494, where the same Chief Justice, Kephart, in his opinion filed March 22, 1939, seems to revoke the authority contained in the earlier quoted dictum. Discussing the method of procedure, in the matter of controller's reports, he says, page 494: "We question the right to proceed by the independent action of assumpsit as we stated at one time."

We accept this language as a warning that, were we to sustain this action of assumpsit in its present form, the Supreme Court would still question the right to proceed in the independent action of assumpsit, as it stated at one time, and reverse our decision.

We therefore conclude that the statutory remedy by appeal from the controller's report, allowed nunc pro tunc, in a case like the present, is exclusive.

There remains for consideration the proper order by which to carry out this view. Section 20 of the Practice Act of May 14, 1915, P. L. 483, provides, in substance, that where the decision of the court on an affidavit of defense raising questions of law, in the nature of a demurrer, disposes of the entire question the judgment should be for defendant. If the decision does not dispose of the entire matter, then the court shall make such order as may be just.

Here the only appropriate action against defendant surety is the action of assumpsit. We are holding that the only appropriate action against defendant treasurer is an appeal nunc pro tunc. In such proceeding, any surcharge of defendant Aubrey by the controller will constitute a final judgment against defendant officer, subject to appeal to the common pleas.

If, upon an appeal nunc pro tunc, a surcharge against the accounting officer is sustained finally, such surcharge will make unnecessary, so far as the officer is concerned, further proceeding under this action of assumpsit. Such judgment against the treasurer will, however, establish the liability of the surety for the sum so fixed. In that event the action of assumpsit against the surety should proceed to trial and judgment. Pending the proceeding by petition for appeal nunc pro tunc the status quo should be maintained. Such order as may be just, under section 20 of the Practice Act, should maintain that status quo. It would, therefore, appear to be our duty to stay proceedings until a petition for appeal nunc pro tunc from the controller's reports may be presented and prosecuted to final judgment.

For such an order there is abundant precedent.

In Kinney v. Philadelphia & Reading Ry. Co., 26 Dist. R. 502, Ferguson, J., says:

"Section 20 of the Practice Act of 1915 provides that, where the decision of a question of law raised in this way is disposed of by the court as to the whole or any part of the claim, the court may make such order as may be just.

Under the circumstances, it would appear to be our duty to stay proceedings until they are amended so as to introduce proper parties, as above suggested. It is so ordered."

In American Surety Co. of N. Y. v. McSpadden, 2 Som. L. J. 267, we find this discussion by Berkey, J.:

"The record standing in this position, the questions of law in the nature of a demurrer were argued by counsel, bringing the matter before the court for disposition under Sec. 20 of the 'Practice Act 1915.'

"An inspection of the plaintiff's statement and the paper filed February 18, 1924, calling attention to the questions of law raised in the affidavit of defense constrains the court to postpone decision on the questions of law in the nature of demurrer until after the issues of fact are determined by a jury. This action by the court affects but the order of proceeding, not the right of the parties, and as the court views the case from the pleadings on file it is a proper exercise of its discretion: Marseilles v. Kenton's Executors, 17 Pa. 238; Commonwealth v. Porter, 33 Pa. 82."

The two cases cited by Berkey, J., are to the effect that upon demurrer, before the Practice Act, the court could, in its discretion, stay proceedings until certain questions of fact are determined.

We therefore make the following

### Order

Now, July 3, 1939, upon consideration, it is ordered and directed that defendants' second and third questions of law, as raised in the affidavit of defense, in behalf of the defendant Thomas R. Aubrey, be and the same hereby are sustained.

It is further ordered and directed that final decision on the questions of law raised by defendants' affidavit of defense, in the nature of demurrer, is postponed and all proceedings as to defendant Maryland Casualty Company are stayed until the liability of defendant Thomas R. Aubrey, if any, be established by an appeal nunc pro tunc

from the applicable controller's reports, whereupon such amendment or amendments as may be necessary to properly define the parties and the issues may be filed by plaintiff.