## Glatfelter *versus* The Commonwealth.

1. The relief fund established by Act of April 8th 1862 has no connection with the "military fund."

2. A settlement of the accounts of a county treasurer of the "military fund" by the county auditors, not appealed from, is conclusive on the Commonwealth.

3. The 49th section of Act of April 15th 1834, authorizing county auditors to audit, &c., the accounts of county treasurers, for money received fo r Commonwealth, is in force.

4. Note *c*, 1 Bright. Purd., p. 300, stating that the 49th sect. of Act of 1834 is repealed, is erroneous.

5. The Acts of Assembly on the jurisdiction of county auditors over the accounts as to the "military fund," construed.

May 19th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Dauphin county :* No. 2, to May Term 1873.

[Glatfelter v. Commonwealth.]

This was an appeal, filed November 4th 1871, by John Glatfelter, treasurer of the county of York, from a settlement by the accounting officers of the Commonwealth, made September 14th 1871.

The accounts were as follows, viz :—

"John Glatfelter, (late) treasurer York county, in account with the Commonwealth of Pennsylvania, *Dr*.

### MILITIA TAX.

| | |
|---|---:|
| To amount of said tax for the year 1869, as per statement of Kell, herewith filed, . . . | $2218.00 |
| Deduct sundry credits, . . . | 1090.46 |
| Due Commonwealth, . . . | $1127.54 |
| Accrued interest, . . . . | 112.77 |
| Due Commonwealth, . . . | $1240.31" |

"John Glatfelter, (late) treasurer York county, in account with the Commonwealth of Pennsylvania, *Dr*.

### MILITIA TAX.

| | |
|---|---:|
| To amount of said tax for the year 1868, as per statement herewith filed, . . . | $2233.50 |
| Deduct sundry credits, . . . | 1188.83 |
| Due Commonwealth, . . . | $1044.67 |
| To amount due Commonwealth for the year 1869, | $1240.31 |
| Militia tax, as above, . . . | 1044.67 |
| Accrued interest, . . . . | 167.15 |
| Due Commonwealth, . . . | $2452.13" |

On his appeal, Glatfelter filed seven "specifications of objections;" none are necessary to notice but the following :—

2. Because the said appellant settled his accounts annually as treasurer of the county of York, for the years 1868 and 1869, with the auditor-general, and holds his acquittances in full for the balance due the Commonwealth on said settlements.

3. Because the appellant is entitled to a credit of $721.65 in the year 1868, and $528 for the year 1869, for money paid to assessors of the county of York, for their services in making rolls, giving notice, &c., which moneys were paid on orders issued by the commissioners of said county for that purpose, and allowed by the auditors of the county of York, instead of the sum of $134.01

[*Glatfelter v.* Commonwealth.]

in the year 1868, and $133.08 in the year 1869, allowed in the settlement from which this appeal is taken.

4. Because the said appellant is not allowed a credit of $400 in the year 1868 and $400 in the year 1869 for money paid by him to the commissioners of the county of York, for their services in making enrolments required by law in regard to said military fund, and allowed by the auditors of York county in the adjustment of his accounts.

The appeal was tried April 29th 1872, before Pearson, P. J.

The Commonwealth gave evidence of the amount of militia tax paid to Glatfelter, as shown by his books as county treasurer in his own writing, for the years 1868 and 1869, being the same as those charged to him in the settlement by the Commonwealth's officers.

The Commonwealth further (under objection by the defendant and exception) gave in evidence the settlement from which the appeal was taken, and proved that no charge for military tax had been made against Glatfelter prior to that settlement.

The defendant testified that the military tax had been paid out by him in accordance with the county auditor's report, and that he had paid the balance in his hands to his successor as county treasurer. He also testified specifically as to the items of credit in his account.

The settlements of Glatfelter's accounts with the Commonwealth, by the accounting officers, on May 24th 1869, and May 16th 1870, were also given in evidence; these settlements showed that Glatfelter had paid in full all that appeared to be due by them; neither settlement contained any charge against him for military tax.

The following certificate was also given in evidence :—

"We, the auditors of York county, respectfully report, that we have carefully examined and audited the military tax accounts of John Glatfelter, treasurer of said county, and after deducting all his credits, we find a balance in his hands, and due the county, of one hundred and forty-five dollars and ninety-seven cents, which is submitted.

"In witness whereof, we hereunto set our hands and seals, this 12th day of June 1869."

Also a similar certificate dated February 8th 1870, finding a balance due by Glatfelter to "the Commonwealth of $275.38."

Both auditors' reports were approved by the Court of Common Pleas of York county.

The defendant offered to prove that the commissioners of York county in 1861 made an appropriation of $10,000 for the relief of the families of volunteers, and that the treasurer of that fund disbursed it for relief purposes until 1867, when he paid $857.26, the balance remaining in his hands, to the county commissioners.

[Glatfelter *v.* Commonwealth.]

This was objected to by the Commonwealth, rejected by the court and a bill of exceptions sealed.

The Commonwealth under objection by defendant and exception proved that there was a military organization in York county in 1866, which was in force in 1868 and 1869.

The defendant submitted the following points, both which were denied :—

3. The accounts of county treasurers, of moneys received for the use of the Commonwealth, must be settled by the county auditors, and not by the auditor-general. The Commonwealth having proved, in this case, that the accounts of the defendant, as treasurer of York county, were settled by the county auditors, and not appealed from, such settlements are conclusive.

4. Under the 5th section of the Act of 7th of April 1870, the state has no interest in the military fund, and the auditor-general no jurisdiction over the settlement thereof; the verdict in this case must, therefore, be for the defendant.

" The court, after stating the facts in the case and referring to the auditing of the accounts by the county auditors, said:—

Taking it for granted that they were audited, yet we are of the opinion and so instruct you that the county auditors have nothing to do with the military accounts, they are out of their jurisdiction, are not to be settled by them but by a military board or the state officers. The auditors might as well undertake to settle the accounts of the Bank of York County as those military claims. When the auditors make a settlement of a matter within their jurisdiction and regularly file the same according to law, it is conclusive on the state and all parties, unless appealed from. What was actually embraced in this settlement we do not know, not having read the papers, but we instruct you that so far as it embraces these military claims it was void and beyond their jurisdiction ; it might as well have been made by a board of township auditors. The orders drawn on the treasurer by the county commissioners to pay out of this fund are also void, as the militia law provides for the money being drawn by the orders of a military board, and not by the county commissioners. The accounts of the treasurer are also to be settled by the same tribunal when there is one. If there is none, then, as we conceive, it must be done by the state accounting department, or the money remain in the hands of the treasurer undrawn and the accounts unsettled. It is proved by the defendant that he paid no part of this fund to the families of volunteers. There were none to whom it could have been paid at that time. * * *

" We come now to the only point of any legal difficulty in the case—had the state officers jurisdiction over this account, and the legal authority to make a settlement? They are clearly authorized by the Act of 1871 to settle the accounts of all persons indebted

[*Glatfelter v.* Commonwealth.]

to the state, and holding money to which she is entitled. This is a point not raised in the specifications, but it presents itself directly to our consideration. By the 5th section of the Act of April 7th 1870, Pamph. L. 63, the county treasurers are required to hold the military fund and disburse the same according to the direction of the 99th section of the Act of 1864, but in any county where there is no military organization the money is to be paid at the end of each year to the school boards of the respective districts, in proportion to the number of taxable inhabitants therein. As we understand the law and the facts there was a volunteer military organization in York county during the whole term of this treasurer, and such organization still continues. It is in proof by General Russell, the adjutant-general, that there were four uniformed volunteer military companies in York county, regularly organized as companies, all of which had drawn arms from the state, and which were entitled to receive certain sums to reimburse the expense of uniforms and their annual outlay for various purposes, designated in the military laws, though there was no brigade organization. As we construe the law this fund cannot go to the school board in any county where there is a military organization entitled to any part thereof. Any one of these companies constituted a military organization. Therefore the school boards could not claim the money. By the Act of 21st April 1858, Pamph. L. 425, and other parts of the same and subsequent laws, this fund is to be paid out for the benefit of the uniformed militia of the county, to be drawn from the treasury by the officers of the brigade, and whatever is not wanted for that purpose is to go into the state treasury for the use of the general military fund. By the 99th section of the Act of May 4th 1864, the brigade officers constitute a board, with power to audit and adjust all claims on the brigade fund, for expenses, &c., and draw their order on the treasurer for the amount. When no such board exists, it is very possible that the organized companies may find a difficulty in drawing their money for want of the proper orders, though we are inclined to believe that they can draw out of the state treasury—they are clearly entitled to receive it under the law. There being no other tribunal lawfully entitled to settle the account of the county treasurer, and all surplus being due to the Commonwealth for military purposes, the settlement must be made by the accounting department. It is pretty difficult to determine, under the numerous and complex militia laws, what are or are not in force; but so far as we have seen, this part of the Act of 1858, which gives the surplus to the state treasury, has not been repealed. We are, therefore, of the opinion that the auditor-general and state treasurer can lawfully settle this account, and the general outlines of the settlement made by them are correct. Some of the details must be corrected in the manner indicated, such as the allowance of the sum paid to the succeeding treasurer."

The verdict was for the Commonwealth for $2268.85.

[Glatfelter *v.* Commonwealth.]

The defendant took a writ of error and assigned for error the rejection of his offer of evidence,—the denial of his points and the charge of the court.

*J. Gibson* and *L. W. Hall* (with whom was *J. W. Bittinger*), for plaintiff in error ; as to the conclusiveness on the Commonwealth of the settlement by the county auditors, cited Act of April 15th 1834, sect. 49, Pamph. L. 546, which provides that they shall audit, &c., the accounts of the county treasurer, receiving money for the Commonwealth.   Sect. 56 of same act gives an appeal by the Commonwealth within four months, and by the county and treasurer within sixty days, after which time if there be no appeal the settlement is conclusive : Commonwealth *v.* Lamb, 3 W. & S. 435 ; Northumberland Co. *v.* Bloom, Id. 542 ; Blackmore *v.* County of Allegheny, 1 P. F. Smith 160 ; Elder *v.* Juniata Co., 5 Id. 485.

The Commonwealth had no interest in the fund.   Sect. 3, pl. 8, Act of April 21st 1858, Pamph. L. 425, is repealed : Acts of April 8th 1862, Pamph. L. 314 ; May 15th 1861, sect. 14, Pamph. L. 754 ; May 4th 1864, sects. 95, 96, Pamph. L. 239–240 ; April 7th 1870, sect. 5, Pamph L. 62.

*J. Kell* and *W. McVeagh* (with whom were *L. D. Gilbert*, Dep. Atty.-Genl., and *Dimmick*, Atty.-Genl.) for Commonwealth.—Sect. 49 of Act of 1834 is repealed by sect. 1 of Act of March 15th 1847, Pamph. L. 355.   The "military fund" is exclusively for military expenses, and is not to be paid out by county treasurers, but by a board of officers, and the balance is to be paid into the state treasury ; Act of April 21st 1858, *supra.*   A military board, consisting of the officers of the brigade, is authorized to audit the military fund : Act of May 4th 1864, *supra*, sect. 99.

The opinion of the court was delivered, July 2d 1873, by

AGNEW, J.—The subject of this controversy is the military fund paid into the hands of the defendant as treasurer of York county for the years 1868 and 1869.   If the county auditors had authority to settle the treasurer's account for this fund, it is conceded the case is at an end, no appeal having been taken by the Commonwealth from the settlement of the auditors.   This, therefore, is the question to be determined.   To prevent confusion, it is proper to say at once that the relief fund established by the Act of 1862 has no connection with the military fund.   The relief fund account was by that act to be settled by the county auditors, but the settlement of the account for the military fund depends on other laws.

Before examining the legislation specifically applicable to the military fund, it is proper to notice the general jurisdiction of the county auditors over the accounts of the treasurer for funds col-

[Glatfelter *v.* Commonwealth.]

lected for the Commonwealth. By the 48th section of the Act of
15th April 1834, the accounts of the county treasurer are to be set-
tled by the county auditors, the balance stated, and a report made
thereof to the Court of Common Pleas: Pamph. L. (1834) 545; 1
Brightly Purd. 300, pl. 10. The 49th section makes it the duty of
the auditors, also, to audit, settle and adjust the accounts of the
treasurer of the county with the state treasury, and make a separate
report thereof to the court: Pamph. L. (1834) 546. This coincides
with the provision in the 38th section, p. 543, making it the duty
of the county treasurer to keep separate accounts of all moneys
received by him on behalf of the Commonwealth, from the various
sources named in the section, one of which is "exempt fines."
Mr. Brightly, in note *c* to page 300, vol. 1, Dig., says the 49th
section is repealed by the Act of 15th March 1847, § 1. Hence
he has omitted the 49th section from his Digest. This is an error,
the repeal being partial and relating only to those officers named
in the Act of 21st May 1846, § 10, to which the Act of 1847 is
a supplement: Dig. 2d vol., p. 1392, pl. 208. The county trea-
surer is not one of them. The pamphlet laws clearly evince this,
and an inquiry at the auditor-general's office resulted in a state-
ment of the fact that the accounts of the county treasurers in the
several counties are settled as before the passage of the Act of
1847; and this agrees with my own knowledge. The county
auditors, therefore, have jurisdiction of the account of the military
fund, unless by special legislation that fund is an exception. But
it is not, as an examination of the laws on the subject conclusively
shows.

The act to revise the militia system and to provide for the train-
ing of such as shall be uniformed, passed the 17th of April 1849,
repealed all former laws and supplements to laws on the subject of
the militia, except those parts relating to the adjutant-general, to
contested elections, courts-martial, and calling the militia into the
actual service of the United States: Pamph. L. (1849) 670, § 21.
This act, therefore, furnishes a beginning to the inquiry as to the
military fund. Under this law, after the enrolment, all ununi-
formed persons between 21 and 45 years of age are subjected to
a payment of fifty cents, which the 8th section, p. 666–67, re-
quired the county commissioners "to add to the amount of the
state tax of each delinquent, to be collected with the same under
the same authority, and in all respects as authorized in the case
of the collection of county taxes."

The 10th section then provides for the duties of the county
treasurer. Thus this military fund is assimilated directly to other
state and county funds in its collection and custody, and there
being no other provision in the Act of 1849 as to the settlement
of the county treasurer, it must be audited and settled in the same
manner as they are. This point is settled by the next act, a sup-

[Glatfelter *v.* Commonwealth.]

plement to the Act of 1849, passed April 30th 1853 (Pamph. L. 654). The 10th section expressly enacts that it shall be the duty of the county treasurer to prepare annually a statement of the receipts and expenditures of the *military fund* of the said county, setting forth the amount received from each collector separately, and the amounts paid each person to whom money shall be due, which statement, *after being examined and passed by the county auditors*, shall be published as other accounts of the treasurer, and the expense paid out of the military fund. The 2d and 3d sections, referring to payments to the treasurer, also bear on the question. The Act of 1853 seems not to have been brought to the attention of the learned judge in the court below, as I do not find it in either paper-book. And indeed the Act'of 1849 appears not to be noticed. The Act of April 21st 1858 (Pamph. L. 421) is the next law, and is important in its bearing. It is a general revision of the militia laws, but is without a repealing clause. The same general system is re-enacted for the enrolment of the militia through the instrumentality of the assessors and commissioners, and for the collection of the commutation-tax of fifty cents for every person enrolled and liable to its payment, and for the collection of fines and penalties. This tax is to be collected at the same time and in the same manner as taxes are collected in each county, under warrants issued by the commissioners. It is made the duty of the county treasurers to procure suitable books in which shall be entered an account of all moneys received in pursuance of the act, and which shall be called the Military Fund of the county, and of payments out of the fund. The treasurer shall also report to the adjutant-general, at the close of each year, the amount of moneys received as commutation and fines, and paid out, and the balance on hand.

Thus, throughout the act, the county treasurer is made the custodian of the military fund, as he is of other funds of the state and county, while the law is silent as to the settlement of his account. There being no repealing clause, and no substitute, his account is necessarily to be audited and settled under former laws. But as the court below was evidently misled by certain provisions of the Act of 1858, it is proper to notice them. The judge held, that the treasurer's account was not to be settled before the county auditors, but by a military board. This was a misapprehension of the 10th section. It provides for the creation of a board of officers, whose duty it is made to "audit all just claims on the military fund of such brigade for contingent expenses and for the *per-diem* pay of all officers, musicians and privates, for service and duty performed in and for said brigade." The evident purpose of this board is to adjust and allow *the just claims upon the military fund before payment* shall be made by the treasurer, for the section immediately proceeds to add: "and shall make their

24 P. F. Smith—6

order on the proper county treasurer, which shall require him to pay such order out of any money in his hands belonging to the military fund of the brigade." The meaning is made still more obvious by the 8th clause of the 3d section (p. 425), which says: "and no moneys shall be paid from such fund (military) by the county or city treasurer but upon orders of a board of officers, as provided in this act (section 10th), countersigned, &c., &c.; and the said board shall settle *their* accounts with the county or city officers."

Thus even the accounts of the board of officers are to be settled before the county auditors. They bear the same relation to the military fund that the commissioners bear to the county funds, in determining the just claims upon it and settling their accounts, like the commissioners for its proper administration. This is the check provided by the law against the allowance of unjust claims upon the military fund, and for a periodical settlement therefor. Thus the account of the county treasurer, who can pay only on the orders of the board of officers, must necessarily be audited and settled afterwards, and of course according to prior laws, for no substitute is provided in this law.

Next we find the last proviso in the 28th section of the Act of 15th May 1861 (Pamph. L. 757), suspending, during the existence of the war, any payment for military parades to volunteers not in actual service, and directing the military tax to be collected and paid into the treasury of the Commonwealth to meet the expenses of the militia mustered into actual service. That this was but a different appropriation, and did not change the mode of collecting and accounting for the military tax, is made obvious by the Acts of 4th March 1862 (Pamph. L. 76), and 8th April 1862 (Pamph. L. 314). The latter made a new appropriation of the tax to the relief fund, and the several county treasurers were authorized and required to pay the same on orders of the commissioners for that purpose. The receipt and disbursement of the military fund remaining thus with the county treasurer, his account remained to be settled as before, for no change in this respect was made. In the year 1864 the militia system again underwent a general revision in the Act of 4th May (Pamph. L. 221). Under this act each county having the minimum number of enrolled militia constituted a brigade, and the treasurer of each city and county was expressly required to receive and disburse all moneys arising from the act payable into the brigade fund; and this fund was further increased by numerous fines and penalties: *vide* §§ 71–73, 76, 78, 79, 80, 87, 88, 89. This act provides no mode of auditing or settling the accounts of the treasurers, and the repealing clause is only of inconsistent acts. Thus again the law left the account of the treasurer to be settled as provided for in prior laws. The 99th section, p. 240, also pro-

[Glatfelter v. Commonwealth.]

vides for the creation of a military board, "who shall have power to audit and adjust *all claims upon the brigade fund* for expenses accruing under the provisions of this act, and *shall make their order on the treasurer* for the payment thereof." This is a repetition of the provision in the Act of 1858, requiring a military board for the adjustment of claims on the military fund before they shall be paid by the treasurer, and therefore leaves him as before to settle his account of disbursements before the county auditors according to law. This is the last law, for the Act of 1870 passed as a supplement to it, was after Mr. Glatfelter had gone out of office, and has no bearing on the case. It may be remarked upon it, however, that it is *pari materia* and repeats the duties of the county treasurers under the 99th section of the Act of 1864. Thus a review of the legislation of the state proves conclusively that neither the Act of 1834, conferring general jurisdiction upon the county auditors to settle the accounts of county treasurers with the state treasury, nor the special Act of 1853, expressly conferring it over the military fund, has been repealed. In all the revisions of the militia laws the county treasurers being made custodians and disbursers of the military fund, just as in the case of other public moneys coming into their hands, it is evident the legislature did not consider it wise or necessary to change the mode of auditing and settling their accounts. A new system would not only complicate settlements, but might lead to entangling questions. The accounts of the plaintiff in error for 1868 and 1869 having been examined and passed by the county auditors, it is not in the power of the auditor-general to resettle them. According to numerous cases, the settlement of the auditors is final and conclusive, unless appealed from under the 56th section of the Act of 1834 (Pamph. L. 547), which includes the Commonwealth by name; the 57th section also allowing the Commonwealth four months after the filing of the report for an appeal, while it allows the officer but sixty days.

Judgment reversed, and a *venire facias de novo* awarded.