## Westmoreland County *v.* Philip Fisher, Appellant.

| | |
|---|---|
| 172 | 317 |
| 19 SC | ¹135 |
| 172 | 317 |
| 207 | ¹134 |
| 172 | 317 |
| 205 | ¹345 |
| 205 | ¹362 |
| 206 | ¹526 |
| 172 | 317 |
| 30 SC | 125 |

*County auditors—Settlement of treasurer's account—Conclusiveness of settlement—Res judicata—Act of April 15, 1834.*

Under the act of April 15, 1834, P. L. 545, relating to the settlement of accounts by county auditors, the special tribunal created by the act is exclusive of all others, and its decision if not appealed from is final and conclusive, and cannot be opened for the correction of errors, or again inquired into by the auditors or by the court.

Where the county auditors have audited the accounts of the county treasurer and have filed their report, and the treasurer takes no appeal, but promptly pays the amount charged against him, county auditors cannot subsequently reëxamine his accounts, and the fact that the treasurer in obedience to a notice from the auditors appears before them with his books and submits them to a second examination, in consequence of which the auditors file a second report charging him with additional sums, will not estop the treasurer from setting up the conclusiveness of the first report.

Argued Oct. 10, 1895. Appeal, No. 190, Nov. T., 1895, by defendant, from order of C. P. Westmoreland Co., Nov. T., 1894, No. 69, refusing to strike off supplemental county auditors'

report, and judgment thereon. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Petition to strike off report of county auditors. Before WICKHAM, P. J., specially presiding.

The court below stated the facts as follows:

Philip Fisher, the petitioner in this proceeding, was treasurer of the county of Westmoreland for the years 1891, 1892 and 1893.

In auditing his accounts for the years 1891 and 1892, respectively, the county auditors took his statement as to the amounts of money received by him on sales and liens, instead of examining for themselves the tax lien book and the treasurer's sale book, in his office, and thus ascertaining, from these records, what moneys were paid him on the two accounts mentioned. The amounts reported by the petitioner fell considerably short of the sums he actually received and owed the county.

When the auditors, at their sitting in 1894, came to the work of auditing the petitioner's accounts with the county for the preceding year, they were unable to obtain the tax lien book and treasurer's sale book, for the reason that the treasurer then in office was preparing a large sale list and was constantly receiving moneys from delinquent taxpayers and could not, or at least he thought he could not, spare these books from his office. The petitioner reported to the auditors that he had taken in, during the year 1893, on the two accounts above mentioned, moneys aggregating $2,065.40. The auditors were unwilling to take his statement as conclusive, and by an arrangement with the county commissioners, and without consulting the petitioner, adjourned to meet at a time when the records mentioned could be secured from the treasurer's office. Before adjourning, however, they prepared a report, in form complete and final, in which they included the above amounts given them by the treasurer. This report, although not intended to be final, was filed March 26, 1894, and being unappealed from, has the effect of a judgment, under the act of April 15, 1834.

On July 9, 1894, the auditors after due notice to the petitioner, met, pursuant to adjournment, and proceeded to examine the tax lien and treasurer's sale books, not only so far as they

related to the business of 1893, but as well for the years 1891 and 1892. They sat from July 9th until August 3, 1894, and the result of their investigations was three reports, in each of which they brought the petitioner in debt to the county. These reports were filed in the court of common pleas on September 3d of the same year. The report covering the last year of the petitioner's term, and which, for reasons that appear further on, is the only one that need be considered at any length, shows that he still has in his hands moneys collected for and belonging to the county, amounting to $1,596.70. That this money, as well as the sums charged against him in the supplemental reports for the years 1891 and 1892, was received by the petitioner and never accounted for, is established by the evidence, beyond a reasonable doubt. The proof is furnished by his own books, and cannot be controverted.

The petitioner was notified of the second sitting of the auditors, he appeared before them, made no objection to the further examination and auditing of his accounts, but, on the contrary, encouraged and aided, or pretended to aid, them in their work.

The court below held:

That under the peculiar circumstances of the case, the petitioner's remedy, so far as the second report of the auditors, relating to his accounts for the year 1893 is concerned, was by appeal and not by motion to strike off the report. The supplemental reports relating to the petitioner's accounts for the years 1891 and 1892 cannot be sustained.

And now, to wit, May 25, 1895, the reports of the county auditors, filed at Nos. 67 and 68 of November term, 1894, are declared void and directed to be stricken from the record. The report filed at No. 69 of said term is declared and held to be valid and binding, and is directed to stand. It is further directed that the costs of this proceeding shall be paid by the county of Westmoreland.

*Error assigned* was above order.

*John B. Head, James S. Moorehead* with him, for appellant. The auditors had no jurisdiction of the accounts embraced in these audits after March 26, 1894: Northumberland County v.

Bloom, 3 W. & S. 542; Northampton County v. Yohe, 24 Pa. 305; Blackmore v. Allegheny County, 51 Pa. 160; Siggins v. Com., 85 Pa. 278; Northampton County v. Herman, 119 Pa. 373; Schuylkill County v. Boyer, 125 Pa. 226; act of April 15, 1834, P. L. 545.

The right to plead to the jurisdiction of a tribunal is not to be lost by mere appearance before it and not even by consent, except possibly under very extraordinary circumstances. It is not too late to assail the jurisdiction of the subordinate tribunal in the highest appellate court: Collins v. Collins, 37 Pa. 387; Pantall v. Dickey, 123 Pa. 431; Hill v. Tionesta Twp., 129 Pa. 525; Schuylkill County v. Minogue, 160 Pa. 164. Fisher was not estopped from setting up the conclusiveness of the first report: Kilheffer v. Herr, 17 S. & R. 319; Com. v. Moltz, 10 Pa. 527; Wright's App., 99 Pa. 425.

*D. S. Atkinson*, for appellee.—Fisher raised no objection to the action of the board, aided and encouraged them to proceed with the auditing of this special and particular matter, recognized their right to proceed and adjust these matters which had been left over for future adjustment: Kilheffer v. Herr, 17 S. & R. 319; Smith v. Elliott, 9 Pa. 346; Lewis v. Nenzel, 38 Pa. 225.

OPINION BY MR. JUSTICE FELL, January 6, 1896:

By the act of April 15, 1834, it is made the duty of the auditors of each county to audit, settle and adjust the accounts of the commissioners, treasurer, sheriff and coroner of the county and to make report thereof to the court of common pleas together with a statement of the balance due from or to the officer. The act provides that the report when filed shall have the effect of a judgment, and if not appealed from within sixty days execution may issue thereon. The auditors are empowered to issue subpoenas and attachments to compel the attendance of witnesses and the production of papers, and to commit persons refusing to testify. Since the passage of the act it has been uniformly held that the special tribunal created by it for the settlement of the accounts of the county officers named is exclusive of all others, and that its decision if not appealed from is final and conclusive, and cannot be opened for the correction of errors or

again inquired into by the auditors or by the court: Northumberland Co. v. Bloom, 3 W. & S. 542; Wilson v. Clarion Co., 2 Pa. 17; Northampton Co. v. Yohe, 24 Pa. 305; Blackmore v. Allegheny Co., 51 Pa. 160; Glatfelter v. Commonwealth, 74 Pa. 74; Siggins v. Commonwealth, 85 Pa. 278; Northampton Co. v. Herman, 119 Pa. 373; Schuylkill Co. v. Boyer, 125 Pa. 226.

In the case before us the county auditors met the treasurer after the expiration of his term of office for the purpose of auditing his account for the year 1893. After an examination which they now allege was incomplete, as they were unable to go over the tax lien and treasurer's sale books thoroughly, they prepared, and on March 26, 1894, filed their report in the common pleas, charging the treasurer with a balance of $18,089.72. This report contained numerous items of charge for accounts realized from tax liens and treasurer's sales. No appeal was taken by the treasurer, and the balance found to be due by him was promptly paid. Without consulting the treasurer, and without notice to him, the auditors adjourned to meet at a time when they could have a better opportunity to examine the books. They met again on July 9, and at subsequent times, and reëxamined the books, and on September 3 they filed their separate reports for the years 1891, 1892 and 1893, in each of which they charged the treasurer with an additional amount found to be due the county. The treasurer had no knowledge of any of these meetings until July 28, when he was notified to attend a meeting to be held on the 30th. He was present at this meeting and assisted in the examination of the accounts by producing his books and papers. The court directed the reports for 1891 and 1892 to be stricken from the records, but refused to make a similar order as to the report for 1893, holding it to be valid and binding.

It appears from the opinion filed that the learned judge of the common pleas, while recognizing the force and effect of the decisions to which we have referred, concluded that the second report covering the accounts for 1893 could be sustained as a valid adjudication on the ground that the treasurer by appearing before the auditors and assisting in the examination had waived his right to object to their jurisdiction to reaudit his accounts. To his conclusion we do not assent.

The finding of the auditors in form and effect was final. It became at once a judgment, and by lapse of time a final judgment. Their jurisdiction as to it and as to the accounts upon which it was based was ended. The power to review it was vested in the common pleas. In Northampton Co. v. Yohe, supra, it was said: "It seems to be an obvious deduction that after the board of auditors have filed their report they have no further power over it. It passes into the custody of a court of record, becomes a judgment, and is no more subject to the supervision and review of the auditors who made it than the judgment entered as an award of arbitrators is liable to be overhauled by them." Nor was the appellant estopped from alleging their want of jurisdiction. The earlier meetings had been held without his knowledge. He attended the one meeting of which he had notice, and presented his books and papers, but he made no representation and did nothing indicating an intention to waive any right which he possessed. The tribunal was one of limited power. The jurisdiction of the subject-matter was exhausted, and it was the right of the appellant to assert this at the hearing of the rule to show cause.

In the case of Schuylkill Co. v. Manogue, 160 Pa. 164, it was admitted that the county auditors had exceeded their powers in auditing the accounts of an attorney employed by the commissioners, but it was argued that the defendant by appealing from the report of the auditors had recognized the validity of the judgment, and was estopped from alleging their want of jurisdiction. In the opinion the present Chief Justice said: "Want of jurisdiction may be taken advantage of at any stage of the case. An appeal from the judgment taken out of abundance of caution cannot have the effect of making a void judgment either a voidable or a valid one. If void in its inception for want of jurisdiction in the county auditors, it is still void."

The order of the court of common pleas of May 25, 1895, in so far as it relates to report No. 69, is reversed and set aside, and it is now ordered and decreed that the rule of September 29, 1894, to show cause why the report should not be stricken from the record be made absolute.