O'Gara et al., County Commissioners, v. Phillips.

528

Argued May 13, 1929. Before Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Charles M. Clement,* for appellant.—The jurisdiction of the board of county auditors is limited to an adjustment and settlement of an officer's accounts for the preceding year. The board has no authority to open the accounts for the years prior to the preceding year and re-audit and adjust them: Spyker v. Wible, 236 Pa. 380; Westmoreland Co. v. Fisher, 37 W. N. C. 441; Northumberland Co. v. Bloom, 3 W. & S. 542.

Where the county auditors have audited the accounts of the county treasurer and have filed their report, and the treasurer takes no appeal, but promptly pays the amount charged against him, county auditors cannot subsequently reëxamine his accounts, and the fact that the treasurer in obedience to a notice from the auditors appears before them with his books and submits them to a second examination in consequence of which the auditors file a second report charging him with additional sums will not estop the treasurer from setting up the conclusiveness of the first report: Lewisburg Bridge

Co. v. Co., 232 Pa. 255; Com. v. Barnett, 199 Pa. 161; English v. English, 19 Pa. Superior Ct. 586.

The report does not show any auditing: Wyoming Co. Auditor's Report, 27 C. C. R. 585; Com. v. U. S. Fidelity, etc., Co., 220 Pa. 148.

The report was not filed according to law: Goehrig v. Lycoming Co., 13 Pa. Superior Ct. 67; Guyer v. Bedford Co., 49 Pa. Superior Ct. 60.

*J. A. Welsh,* with him *W. Irvine Wiest,* for appellee. —The financial affairs of a county such as this are managed by a controller, who is given the power to audit and settle accounts, as are county auditors: Bachman's App., 274 Pa. 420; Scranton v. Lackawanna Co., 214 Pa. 509.

No special form or manner of preparing the report is required; the purposes of filing the report is to give notice to all persons who may be interested therein or affected thereby: Godshalk v. Co., 71 Pa. 324; Brown v. Com., 2 Rawle 40; Hanover Twp. Sch. Dist., 265 Pa. 157.

The County of Northumberland contends that the salary fixed and provided for by the Act of 1923, P. L. 62, is in lieu of all moneys, fees, commissions, perquisites, mileage and other allowances, which are now, or which may hereafter be received from any source by the county treasurer: Luzerne Co. v. Morgan, 263 Pa. 458.

The collection of unseated land taxes is governed by statute. The sole authority to collect such taxes is vested in the county treasurer in his official capacity: Schuylkill Co. v. Pepper, 182 Pa. 13; Potter Co. v. Twp., 47 Pa. 162; Cameron Co. v. School Dist., 117 Pa. 149.

From the decisions it is clear that the authority to collect the unseated land taxes is vested in the county treasurer in his official capacity: York Co. v. Fry, 290 Pa. 310; Bachman's App., 274 Pa. 420.

530

OPINION BY MR. JUSTICE KEPHART, September 30, 1929:

The county commissioners of Northumberland County, prior to 1923, fixed the commission to be paid the county treasurer, for the collection of taxes from unseated lands due the various districts, at two and one-half per cent, and a similar amount for disbursing the money collected. The Act of April 12, 1923, P. L. 62, gave the treasurer a fixed compensation, and section 6 reads that the salaries provided by the act shall be in lieu of all or any moneys, fees, perquisites, mileages, expenses, and other allowances which are now or may hereafter be received by the treasurer. The treasurer, however, continued to receive the commissions for 1925, 1926, and 1927, amounting to $23,331.81, claiming the right to do so under the Act of May 23, 1887, P. L. 178. The controller, in auditing the treasurer's account for the year 1927, reviewed those for the two prior years as they related to commissions and held they were the property of the county and surcharged the treasurer. The court of common pleas sustained the surcharge and directed judgment in favor of Northumberland County.

The questions before us may be summarized as follows: First, what the powers and duties of the county controller are in respect to accounts audited; second, the effect of a controller's report as to such accounts; and, third, whether the Act of 1923 requires the county treasurer to pay to the county the commissions received for the collection of taxes due the districts from unseated lands.

The duties of a county controller embrace those formerly performed by county auditors. We held in Bachman's Appeal, 274 Pa. 420, 422, that under the Act of 1895 the powers and duties of county controllers and county auditors, as prescribed by the Act of April 15, 1834, P. L. 537, were substantially the same. Section 4 of the "Controllers Act" of May 6, 1909, P. L. 434, provides: "The controller shall have a general supervision

and control of the fiscal affairs of the county, and of the accounts and official acts of all officers, or other persons who shall collect, receive, or distribute the public moneys of the county, or who shall be charged with the management or custody thereof; and he may at any time require from any of them, in writing, an account of all moneys or property which may have come into their control......" The same provision appears in the Act of June 27, 1895, P. L. 403. Section 15 of that act and section 15 of the Act of May 6, 1909, P. L. 434, give to the controller all the powers conferred on county auditors by the Act of April 15, 1834, P. L. 537. Under both acts, county controllers, governed thereby, have power to issue subpœnas to compel the attendance of officers whose accounts they are required to adjust, as well as any witness whose testimony may be material. The Act of 1834 outlines the practice.

The county treasurer collected the taxes due from unseated lands, and turned them over to the county and various subordinate districts, as townships and boroughs, for road, school and other purposes, as their duplicates demanded. The collection of such taxes is governed by the Act of April 6, 1802, P. L. 178, 185, and the Act of May 23, 1887, P. L. 178, and the county treasurer is the proper and only person to collect them: Schuylkill Co. v. Pepper, 182 Pa. 13, 16; Potter Co. v. Oswayo Twp., 47 Pa. 162, 164. While services of the treasurer in collecting and paying are rendered to these districts, this fact would not prevent the county from claiming, under the Act of August 12, 1923, P. L. 62, the commissions due on account of such service, and, if due the county, they would be the subject of an audit. But even if the county had no claim for commissions, it was entitled to such audit because of its liability for any defalcation on the part of the treasurer for such taxes: Schuylkill Co. v. Pepper, supra. It is of vital importance to know whether the taxes have been col-

lected and properly disbursed. The Act of 1909 is broad enough to include such audit.

The report of a controller, as to all matters covered, as that of an auditor, states the relative positions, from a financial standpoint, of the officers whose accounts are audited and the county whose funds are handled. These positions become fixed and determined as a judgment, unless an appeal is taken within sixty days. We have held that an auditor's (controller's) report is final and conclusive against both county and officer though it is clearly erroneous: Guyer v. Bedford Co., 49 Pa. Superior Ct. 60; Northampton Co. v. Herman, 119 Pa. 373; Glatfelter v. Com., 74 Pa. 74; Armstrong Co. v. McKee, 172 Pa. 64; Blackmore v. County of Allegheny, 51 Pa. 160; section 55 of the Act of 1834. It cannot be attacked collaterally: Hutchinson v. Com., 6 Pa. 124; and can be attacked only as a judgment can be attacked: York Co. v. Thompson, 212 Pa. 561. (See Westmoreland Co. v. Fisher, 172 Pa. 317, 320, for a full discussion.) The report of a controller, however, is not conclusive as to assets which the accounting officer conceals or of which no return is made or which are not officially brought to the attention of the auditing officer. In such cases, there is no audit of that particular fund or account, and the county may sue to recover the money due, or it may appeal from the controller's report nunc pro tunc: Lackawanna County's Appeal, In re Watkin's Report, 296 Pa. 271. The mere fact that the fund was known to or discussed by the officers, is not an audit or an adjudication. It must be actually audited by the controller; his report must show it was before him for consideration: Watkin's Report, supra. If that officer neglects or refuses to audit an account rightfully entitled to audit, he may be compelled by proper proceedings to do so.

Did the county controller audit the commissions charged by the treasurer for these years, or was there anything in the report that might be considered as an

adjudication of their ownership? This can be answered only by what appears in the report. Detailed statements of all taxes received are made for the years mentioned, and the purposes for which they were collected. Similar information was given as to the districts receiving the money, a full statement of the commissions charged for receiving and paying, and the balance due.

The report does not charge the treasurer with the full duplicate for these taxes; the report only concerns the moneys actually collected. This is an unsatisfactory method of stating the account; the treasurer should be charged with the entire duplicate for all purposes. The county is entitled to know how much it may be liable for if a defalcation occurs, and how much is due it for taxes from unseated lands; there should be no guessing as to these amounts. As an illustration: in the recapitulation of assets for 1925, there is an item showing taxes due on unseated lands of approximately $55,000. When we examine the controller's reports for the years prior to 1925 to ascertain these outstanding taxes, and the year 1925 for the same account, we find the total amount of these taxes is below $3,000; yet this item of $55,000 has been carried year after year in the recapitulation of assets.

The account, after charging to the county and the districts the various amounts due each, found the balance to be $1.55, due all districts and the county from the unseated tax account. As thus stated, no reference is made to any claim by, or credit to, the county for the commissions. They have been accounted for.

But appellee says that the subtitle "commissions" in this statement merely noted the money belonging to the county, though all other allocations of money to the districts and the *county* were especially set forth as belonging to each. This statement is made on the theory that what was being audited was the county's money, and unless specifically earmarked as belonging elsewhere they belong to the county. This draws heavily on

534

the imagination and disregards the purpose and effect of the audit. It is an audit of the treasurer's account with the county and the audit is careful to state the items due the county. Moreover, appellee contends the treasurer recognized the county's claim by continuing to carry, in an open bank account as county treasurer, these various items of commissions with other money until 1928, when he withdrew all of the commissions claimed.

The mere fact that the treasurer did not withdraw from the general account the moneys due him would not prevent his claiming what was his property. If the county treasurer had opened and placed in an individual account county funds he might have gotten into serious difficulty; but if, on the contrary, he placed in the account styled "county treasury" his individual funds, he was protecting those funds with his own money as he had the right to do, and it was, to say the least, a matter about which the county should not complain. But the treasurer's bank account was not being audited, and there was no question that he, or his bondsmen, could respond for all money due the county. What was being audited, as we have stated, was the account or books of the county treasurer as they reflected his dealings with the county. The justification for moneys received and disbursed must come from the books of the *disbursing officers,* who were authorized to spend the county's money, or it may come from claims for commissions. But the situation is even worse for the county, in so far as the bank account is concerned. When the controller closed his audit for 1925, he stated precisely the amount of money the treasurer should have on hand, and the particular purpose for which that money was collected. The statement of the controller, of the balance in the hands of the treasurer at the end of the year 1925, made no reference to this commission. With meticulous care, the report shows this balance of January 2, 1926, to con-

sist of nine independent items, no one of which refers to, includes, or could embrace these commissions.

If the county still claims the commissions for that year, as an outstanding asset, then the final paragraph of the controller's report closes the door on any claim by the county. At the end thereof is enumerated a financial statement of the county, and shows in detail its assets; it includes the balance of cash above referred to, all the taxes that were due and unpaid, money due from boroughs, townships, poor districts, individuals, officers, judgments of record, costs and fines outstanding and so forth. No reference is made to this supposed asset, commission, or any part of it, and the commissions for 1926 are in the same condition. But when it comes to this surcharge made early in 1927, from which this appeal is taken, this same statement particularizes in detail the county's claim for commissions among those assets.

The county did not regard this commission as its property, and it is quite easy to see how this occurred. Its officials had been used to the old method, and no change had been made. The difficulty in the present case is not like the one where interest was received on county funds and no mention had been made in the report. We said, in Watkin's Report, that, where interest on county funds had been received but not audited for the given years, there was no audit of the account; the items had not been brought to the attention of the county controller as shown by the report, consequently the rule that the report of the county controller becomes final, not to be opened or again inquired into after the time limited by statute, did not apply. But, as we stated in that opinion, and this is the crux on which this case must rest, where the controller's report considered the items contested, as to such items the report was final and conclusive. As stated in Watkin's Report, "The treasurer should have specified in them all the money received, and, if he believed any of it belonged to him,

should have claimed credit for its retention. His right thereto could then have been passed on by the controller, and on appeal from his report, if any was taken. In this way, the fact of ownership of the fund could have been adjudicated, and the statutory time for taking an appeal would have been controlling." The county treasurer here did make a full and complete return. His report, and the report of the county controller, show conclusively that these moneys were retained by him. The reports for the years 1925 and 1926, being unappealed from within sixty days, are final and conclusive. It was, therefore, beyond the power of the present controller to reopen them in another investigation. A controller's report must be regarded as conclusive as to all matters contained therein or referred to unless fraud appears.

The controller's report is a summary of the business of the county with all its fiscal officers, and is a very important communication to the taxpayers. It enlightens them as to what their servants are doing with the moneys entrusted to them, and sets up a medium by which public officers and their bondsmen may be relieved of the obligations of their trust. When all the matters are submitted, they have an undoubted right to the protection, in the nature of a discharge for failure to appeal, which the law gives them. There was an honest difference as to the ownership of this fund under the Acts of 1887 and 1923. It was not a defalcation nor an attempt to steal. When the controller's report was being made up, the county could have guarded itself against mishap; it was the duty of the commissioners to familiarize themselves with its details or, if necessary, employ such persons as would enable them properly to safeguard the interests of the county. It is not a difficult matter to state an account between an officer and the county, to show the moneys in his hands belonging to the county or to some one else; unless these officers see fit to safeguard the interests of the county

in such investigations, the county will have to suffer the consequences, as it must in this case.

The controller's report covering the year 1927 brings up the final question: Whether the treasurer had a right to keep the commissions. The Act of 1887 referred to, made it certain that commissions belonged to the county treasurer, but the Act of 1923 is so sweeping that when read in connection with section 5 of article XIV of the Constitution, the conclusion of the court below is inevitable that such funds must go to the county. The Constitution says that all salaried officers shall pay into the treasury the fees they are authorized to receive. The Act of 1923, in substance, repeats this. This court, in an opinion by Mr. Justice WALLING, York Co. v. Fry, 290 Pa. 310, said: "......All moneys, fees, mileage, or perquisites received by any of them shall be returned to the county treasury......"; and the only instances where this is not so are where the official acts as the agent of the Commonwealth or other bodies for whom the moneys are collected. Fees or commissions for collecting and paying out money received from taxes on unseated land belong to the county where the treasurer is a salaried officer.

The judgment of the court below is reversed and it is directed that a judgment be entered in favor of the County of Northumberland for the sum of $8,267, the commissions collected for the year 1927, the costs of this appeal to be paid by the County of Northumberland.