## Unangst's Appeal.

490

Argued January 23, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Calvin F. Smith,* with him *Hugh P. McFadden,* for appellant.

*Daniel L. McCarthy,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 22, 1939:

The commissioners of Northampton County proceeded by petition to strike from the record the reports of the county controllers for the years 1932 to 1936, inclusive, so as to reclaim funds from the various officers named

in the reports. Among the reasons offered were that the reports were not filed within the time fixed by act of assembly, nor under the act requiring such reports, nor in the proper office.

The sheriff, whose accounts were involved, applied to intervene for the reason that the reports and judgments thereon were final, to which the commissioners replied that his accounts were never audited by the controllers and constituted a fraud on the county. Other officers likewise sought to intervene but their proceedings are not here involved. The sheriff's application was granted by the court below, whereupon he immediately, under the Act of March 5, 1925, P. L. 23, attacked its jurisdiction to entertain the proceedings to strike off the reports. The court found that it had jurisdiction and intimated the reports had been improperly filed with the prothonotary. It also stated that, because of the controller's unexplained failure to audit the accounts of officers and the manner of filing, the reports were a fraud on the court.

We need not discuss the question of jurisdiction as we are entirely satisfied that even if a controller's report could be struck off, none of the allegations in the commissioners' petition are sufficient in law for that purpose, and the court below should have dismissed it.

Here the reports, though not filed in time, were duly advertised under the General County Law of May 2, 1929, P. L. 1278, section 345, as last amended by the Act of July 18, 1935, P. L. 1184, section 1.[1] As adver-

---

[1] "He shall, in the month of January in every year, make a report, verified by oath or affirmation, to the court of common pleas of said county, of all receipts and expenditures of the county for the preceding year, in detail, and classified as required in the preceding section of this act, together with a full statement of the financial conditions of the county. Such report shall thereupon be published one time in such newspapers published in said county as the controller may direct, the aggregate cost of which shall not exceed one thousand five hundred dollars in any one year, to be paid

tised, they furnished an exhaustive statement of the county's fiscal affairs, and every officer connected with the county government, as well as all taxpayers, must be held to have had ample notice of their contents. The commissioners, as taxpayers, and as successors to any prior board, had such notice when they entered on the duties of their office. The Act does not require specific notice to be given to the county commissioners or any other officer. The various officers, and all others in the county, are sufficiently apprised by the advertising required by the General County Law, which was fully complied with. They now propose to uproot all reports for the years mentioned, wipe out the judgments entered thereon, and leave the county, its taxpayers and fiscal officers without any legal statement of the county's financial status. This they ask to be done though accountants or officers affected may have lost or destroyed much of the evidence to sustain their accounts, and also in face of the fact that the commissioners had a complete statutory remedy to correct any mistake in the reports, or to prevent a failure to audit any of the accounts. Such failure, standing alone, does not constitute fraud or collusion between the controller and the officers. If the auditing officer without ulterior motives carelessly neglects or fails to audit any of the accounts of officers, his neglect or failure is not fraudulent in fact or law.

---

for out of the county treasury. Such report may also be published in printed pamphlets at the cost of the county. The number and cost of such pamphlets to be determined by the controller and the county commissioners.

"The controller shall also, annually, within sixty days after the close of the fiscal year, make a report to the Department of Internal Affairs of the financial condition of the county in manner and form required to be made by the auditors of the county under the provisions of section three hundred sixty-four of this act, and subject to the penalties provided in said section for refusing or neglecting to make said report."

The accounts of the sheriff and other officers have concededly not been audited. This is but an example of the too frequent carelessness of public officers in the performance of the duties entrusted to them. No doubt in some counties the idea still prevails, as it did years ago, that it is not necessary to audit the accounts of all county officers who deal with county money. This is not only erroneous, but the neglect is of the most serious consequence to the controllers, or county auditors who perform similar duties.

But, while this Court has frequently asserted the sound policy that public officers must be held to strict accountability, and that technical objections or unnecessary impediments will not prevent the proper investigation of their accounts *(Godshalk v. Northampton County,* 71 Pa. 324, 329; *In re Auditors' Report,* 245 Pa. 17, 23; *Winters's App.,* 262 Pa. 322, 327), there is a limit to our interference where a statutory method of procedure is provided for the ascertainment and settlement of the fiscal affairs of the county. Under such circumstances, the statutory remedy, being exclusive, must be followed. This is especially true where the result sought can be more accurately and expeditiously attained through the statutory remedy, if diligently followed.

The presumption from the reports is that the officers' accounts were examined and found correct. If for any reason the county commissioners or taxpayers thought there was material error in the reports, this could have been inquired into by exceptions and appeal to the common pleas under Section 379 of the General County Law. In the interest of establishing a sound financial status and a definitely fixed liability, the law requires those desiring to attack the controller's report to act within a specified time. If no action is taken, the conclusion of the report as affecting each officer whose account is audited is to be treated as a final judgment, and cannot be disturbed by any court unless fraud or col-

lusion appears, or circumstances exist from which there is a natural inference of fraud.

While the petition to strike off does not allege fraud on the part of the accounting officers, the established rule is that where there is concealment akin to fraud, there may be an appeal from the controller's report nunc pro tunc. See *O'Gara et al., County Comrs., v. Phillips,* 297 Pa. 526, 532; *Lackawanna County's Appeal,* 296 Pa. 271, 276; *Zeigler's Petition,* 207 Pa. 131. The better practice is to allow an appeal nunc pro tunc challenging only the accounts of the particular officer alleged to be in default. Such concealment not being apparent on the face of the report, it will not support a motion to strike off as is here attempted: *Nixon v. Nixon,* 329 Pa. 256, 263. As the court stated in *Zeigler's Petition,* 207 Pa. 131, at 137: ". . . the court below has full power to deal with the question upon its merits, and to grant equitable relief by *opening* the judgment and allowing an appeal from the report of the auditors to be filed nunc pro tunc; and if upon full investigation it should appear that the report of the auditors had been procured by fraud, it would become the duty of the court to interfere by allowing the appeal asked for. The question, however, being of grave import, ought not to have been summarily disposed of on the petition and demurrer." Here, if appellant knowingly stated an improper account, withholding moneys from the county, or if improper financial transactions were obscured through fraudulent acts, the court could, as to those acts, open the judgment entered thereon if steps were taken within a reasonable time. We question the right to proceed by the independent action of assumpsit as we stated at one time. The parties can secure relief under the Act where fraud is present, and courts should not hesitate to grant it, although to constitute fraud something more definite than failure to report must appear. There must be evidence of active concealment or collusion. But in no case should there be a striking off of the entire report;

it is basically necessary for the fiscal affairs of the county that the report remain filed though it may be changed in one or more particulars in the proper way.

Appellee insists that the incorrect recital in the reports of the statutory authority by which they were filed was fatal. The controller stated that the Act of June 27, 1895, P. L. 403, was the effective act; it had been superseded by Section 345 of the General County Law. But this did not cause the reports to be a nullity. The court will take judicial notice of public statutes: *Goldberg v. Friedrich,* 279 Pa. 572, 574. Furthermore, the statute does not require the controller's reports to make any particular form of recital. See *Godshalk v. Northampton County,* 71 Pa. 324, 329. It was not necessary for the controller to name any statute, and the recital of one was mere surplusage. The reports are in substantial compliance with the applicable law.

Considerable stress is placed on the fact the reports were not filed or published during the month of January in each year, although Section 345 specifically states that they are to be made in that month. It does not appear just what caused the delay, but this omission to file within the month of January will not prevent the reports from being valid. See *Com. ex rel. Fortney v. Wozney,* 326 Pa. 494, 497; *Com. ex rel. v. Griest,* 196 Pa. 396, 416; *Deibert v. Rhodes,* 291 Pa. 550, 554. The statute does not indicate or provide that failure to file in that month will nullify all action by the controller. On the contrary, after the month of January has passed the controller can be compelled by mandamus to file his report, if he fails to do so. See *Armstrong County v. McKee et al.,* 172 Pa. 64, 67; *O'Gara et al., County Comrs., v. Phillips,* 297 Pa. 526, 532. Proceedings for mandamus could not have been instituted until the failure had continued during the entire month of January, and yet if appellees' contention were correct any report filed pursuant to such proceedings would not be valid. This is clearly not the

law. See *Com. ex rel. Kelley v. Pommer,* 330 Pa. 421. The validity of the belated report, however, does not render the controller immune from responsibility for his default. See *Deibert v. Rhodes,* 291 Pa. 550, 556.

The statute directs the report to be made to the court of common pleas. Filing with the prothonotary was filing with the court. He is its appropriate officer. The general practice has been to file the reports of controllers or auditors with that officer. In *Godshalk v. Northampton County,* 71 Pa. 324, it does not appear that the report was made to the judge. The papers were found filed in the prothonotary's office among the records of the court, and the procedure was assumed, without discussion, to be proper. In *Armstrong County v. McKee et al.,* 172 Pa. 64, 67, the report of the county auditors was held to take effect when filed with the prothonotary, though the act specifically required it to be made to the court of common pleas. Other cases have held that filing by county auditors, corresponding to county controllers, with the prothonotary was a sufficient compliance with the statute, and that it was unnecessary to take the reports into open court to be filed by the direction of the judges: *Guyer v. Bedford County,* 49 Pa. Superior Ct. 60; *Cogan v. Bedford County,* 49 Pa. Superior Ct. 262. See also *Com. v. Patterson,* 206 Pa. 522.[2]

The court below should have dismissed the proceedings as instituted, but under our broad powers we will enter such order. The petition to strike off is denied.

Decree reversed, all proceedings to have the controllers' reports for the years 1932 to 1936 stricken off are dismissed without prejudice, costs to be paid by appellees.

---

[2] *Haverford Twp. Sch. Dist., to use, v. Herzog,* 314 Pa. 161, is distinguishable, due to the contrast between the statutory provisions for the entry of judgment by the court and the prothonotary, and the very nature of the judgment involved.