## Commonwealth, for use, Appellant, *v.* Keirsted et al.

Argued December 5, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

W. *Brown Higbee* and *Dean D. Sturgis,* with them
*C. W. Martin,* County Solicitor, for appellant.

*Linn V. Phillips* and *E. W. Arthur,* with them *J. M.
Magee,* for appellee.

PER CURIAM, January 6, 1941:

This appeal arises out of a proceeding instituted by
a petition filed by a tax collector's surety, pursuant
to the Act of April 23, 1929, P. L. 634, for an order
requiring the collector to turn over to the surety certain
tax duplicates, and is the third appeal to this Court
in the case. See *American Surety Co.'s Case,* 319 Pa.
549, and *American Surety Co.'s Case,* 322 Pa. 312.

On the return of the record after our disposition of
the second appeal *(American Surety Co.'s Case,* 322 Pa.
312), the tax collector persisted in her refusal to pro-
duce the tax duplicates for the years in question or give
any information necessary for an audit, and was com-
mitted by the court for contempt. The surety employed
a firm of certified public accountants to attempt a re-
construction of the duplicates and an ascertainment
of the amount actually in default, but before this sur-
vey could be completed, the court below, at a hearing
ordered by the then president judge to review the col-
lector's account, unaided by the collector's duplicates
and records, endeavored independently to determine the
amount of the shortage. Following the hearing, in which
neither the collector nor the surety participated, an
order was entered, on February 16, 1937, fixing the
amount of the defaults at $36,852.25 for the year 1933
and $140,476.27 for 1934. The county thereafter pro-
ceeded to enter judgment by confession upon the official
bonds of the collector for the years 1933 and 1934, and
affidavits of amounts due upon each bond, adopting the

figures arrived at by the court, were filed by the controller.

On September 21, 1937, its private audit having then been completed, the surety filed petitions in the court below asking that the judgments thus entered be opened. It averred that its audit showed additional payments and returns by the collector, which, with supplemental credits to which the collector is entitled for exonerations, exceed the amount of the recorded defaults for both of the years in question; that the county, by failing to keep proper records, by delaying the efforts of the surety to obtain possession of the duplicates and by negligence in other respects, had hampered the surety in its defense and had prevented a proper determination of the amounts owing by the collector; and that the surety was induced to execute its bond for the year 1934 by the representation of the county controller that the duplicate for 1933 had been settled and by its reliance upon the records of the county showing settlement in full for that year. The county commissioners and the controller filed answers denying these factual averments and raising questions of law.

During the progress of the hearing upon these petitions and answers, the collector, for the first time, offered to produce her duplicates, checks, stubs and other records, which she was permitted to do, and she testified from them. Testimony of the auditors employed by the surety and of witnesses for the commissioners and the county controller was also taken. After hearing, the court below held that its order of February 16, 1937, was not conclusive upon the surety and its principal and that the surety had established a *prima facie* case for the opening of the judgments entered upon the bonds. The court opened the judgments and allowed appeals, *nunc pro tunc*, from the controller's reports for the years 1933 and 1934, and these appeals followed.

In modifying the order appealed from when the case was last before us "to the extent necessary to enable

the court below at the earliest convenient time to proceed with the determination of the case to fix the amount of the default, at the same time, as part of the order then to be made, ordering the turnover to the Surety Company of the tax duplicates asked for under the terms of the Act of 1929," it was our manifest desire and purpose that the matter should be proceeded with by the court below in such a way as to accomplish substantial justice to all of the parties involved. Because of the irregularities and differences standing in the way of a proper solution of the intricate problems presented, and upon a "somewhat informal but commendably frank" presentation of the case by counsel for all the parties, this Court was convinced that the widest latitude should be permitted the parties in the further proceedings to determine and fix the amount of the collector's default. This being rendered impossible of accomplishment by reason of the collector's refusal to participate, persisted in until after the entry of the judgment against the surety, and in view of her present willingness to coöperate, as well as other circumstances from which it appears that a just and fair determination of the case can now be had, it cannot be said that the action of the court below was improper or that the making of the orders complained of constituted an abuse of discretion. See *U. S. Savings & Trust Co. v. Helsel,* 325 Pa. 1; *Unangst's Appeal,* 333 Pa. 489.

We take no occasion to discuss in detail the evidence presented at the trial in the court below, nor do we deem it necessary or appropriate to enter into a discussion of the rules of law applicable generally to judgments upon official bonds and the conclusiveness of controllers' reports. The case is, in many respects, peculiarly *sui generis,* and we are of the unanimous opinion that, under all the circumstances, justice requires that the orders appealed from be affirmed.

Orders affirmed, costs in each appeal to abide the final result.