## Commonwealth to use, Appellant, *v.* Patterson.

*Municipalities—Philadelphia—Public officers—Accounts—Audit—Act of June* 1, 1885.

Under the act of June 1, 1885, relating to the government of the city of Philadelphia, it is the duty of the controller of the city to audit the accounts of the health officer, and in the absence of gross fraud practiced upon the controller, or collusion between him and the accounting officer, his official audit is conclusive upon the city, and this is the case although the audit may not have been actually filed in the court of common pleas as provided by the act.

The fact that a public officer has not objected to a reaudit of his accounts for certain years by the controller, will in no way estop him from objecting to another audit of the same years by a new controller.

Argued Jan. 28, 1903.    Appeal, No. 204, Jan. T., 1902, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1887, No. 202, on verdict for defendant non obstante veredicto in case of Commonwealth to use of City of Philadelphia v. Joseph C. Patterson, Jr., Administrator of Joseph G. Patterson, Deceased, et al.    Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Assumpsit on an official bond.    Before AUDENRIED, J.

At the trial the court directed a verdict for $19,132.39, reserving the following questions of law:

1. Were the commonwealth and the city of Philadelphia concluded for the purposes of this claim by the action of the controller of his subordinates prior to an investigation upon which was based the affidavit of the city controller offered in evidence?

2. Was the affidavit of the city controller, which was offered, proper evidence of the amount of default?

3. Was there any legal proof of any default presented in the case upon which a verdict in favor of the plaintiff can be sustained?

The court subsequently entered judgment for defendant non obstante veredicto.

*Error assigned* was the judgment of the court.

*James Alcorn*, assistant city solicitor, with him *Richard*

*Salinger* and *John L. Kinsey*, city solicitor, for appellant, cited: Richter v. Penn Township, 9 Pa. 79; Blackmore v. Allegheny, 51 Pa. 160; Baily v. Com. 20 W. N. C. 221; Com. v. Comly, 3 Pa. 372; Nason v. Poor Directors, 126 Pa. 445; United States v. Prescott, 44 U. S. 578.

*Robert Alexander*, of *Alexander & Magill*, with him *Charles F. Ziegler*, for appellees, cited: Blackmore v. Allegheny, 51 Pa. 160; Com. v. Scanlan, 202 Pa. 250; Westmoreland County v. Fisher, 172 Pa. 317.

OPINION BY MR. JUSTICE DEAN, July 9, 1903:

Joseph G. Patterson, the defendant, was appointed health officer of Philadelphia, February 24, 1887. He gave bond with two sureties in the sum of $15,000, conditioned for the faithful performance of his duties. He went into office March 11, 1887, and served until December 12, 1891, when he resigned. Judgment was entered on his bond as required by act of assembly the day his official duties commenced. It was his duty to collect all moneys, penalties and claims arising out of matters under the supervision of the city board of health, and pay them over to the city treasurer, who fixed the dates and amounts of city money thus received by the health officer?

It is interesting to notice the growth of the city government and the progress in legislation with reference thereto up to the act of June 1, 1885, known as the " Bullitt bill," but that legislation does not materially aid in determining the issue before us, and, therefore, it is not necessary to go into a history of it. The board of health is attached to, and is part of, the department of public safety. The Bullitt bill went into effect the first Monday of April, 1887 ; Patterson went into office March 11 of that year. The act referred to says: " The controller shall at the end of each fiscal year, or oftener if required by councils, and also, upon the death, resignation, removal or expiration of the term of any officer, audit, examine and settle the accounts of such officer and if he shall be found indebted to the city, the controller shall state an account and file the same in the court of common pleas."

The accounts of Patterson as health officer were audited by Controller Dechert for the year 1887, and found to be correct.

His accounts for 1888 were audited by the same officer and found to be correct. In September, 1890, the same officer re-audited the accounts of 1887, 1888 and 1889, and found a balance against Patterson of $4,792.20. This amount he at once paid into the city treasury and dismissed clerk Young, through whose conduct, it was alleged, the shortage occurred. In October, 1890, Controller Dechert again audited the accounts of 1887, 1888 and 1889, and made an audit of the account of 1890 for part of the year. He found there was a balance in Patterson's hands of $7,838.45, which was at once paid into the city treasury. The controller then gave Patterson this certificate:

"October 8, 1890.

"JOSEPH G. PATTERSON, ESQ.,

    "Health Officer, Philadelphia.

"This is to certify that the accounts of your bureau have been audited and adjusted by this department up to and including a part of September 11, 1890, and a deficiency of $7,838.95 has been found, which amount has this day been paid into the city treasury.

"ROBERT P. DECHERT,

"City Controller."

None of these audits by Controller Dechert were filed in the court as directed by the act.

Mr. Dechert's term having expired, on January 1, 1891, Thomas M. Thompson, a new controller, came into office. December 12, 1891, about a year after he had been in office, Controller Thompson again went over the accounts of 1887, 1888, 1889 and 1890 and found a balance against Patterson for those years of $12,044.56, nearly all for the years 1887 and 1888. Mr. Pugh, an assistant, testifies that this was a "complete new audit" of the accounts of 1887, 1888, 1889 and 1890.

On July 8, 1890, scire facie was issued on the original judgment against Patterson and his sureties to recover the balance found against him by Controller Thompson; to this an affidavit of defense was filed; afterwards the court on rule opened the judgment and the case proceeded to trial, apparently, on an issue to determine, what if any amount defendants were indebted on the judgment bond. The court directed a verdict for the full amount of the city's claim, $19,133.29, subject to its

opinion on three reserved points. Afterwards the court entered judgment for defendants, notwithstanding the verdict in a very full opinion. While the judgment is correct, the court more than intimates a doubt of the conclusiveness of Controller Dechert's audits for the years stated in them, because the accounts were not filed in the court of common pleas as required by the act of assembly. We think they were conclusive and ought to be. They were made by a competent officer in compliance with the law; were thorough with every opportunity for examination by the city; were recorded in audit books kept for that purpose. The officer paid over every dollar which the audit showed against him although the accounts were not filed; he could have done nothing more if they had been filed. It was the city's duty to file them for they remained in its possession. Both principal and sureties are now dead.

We are of opinion that under the express provisions of the Bullitt bill, it was the duty of the controller to audit the accounts of the health officer, and that in the absence of gross fraud practiced upon the controller, or collusion between him and the accounting officer, his official audit is conclusive upon the city. The filing in court is a very proper termination or consequence of the audit and the court would doubtless, on application by either the accounting officer or the city, have compelled such action, yet that is not the audit. To audit is to inspect vouchers, to scrutinize accounts, to hear witnesses, and then adjudge and record. All this was done by Controller Dechert; that ended the matter unless subsequent action was taken in court on appeal by one or other of the parties. There was no law either by decision or statute which authorized Controller Thompson to audit Controller Dechert's audits. The same principle more than once announced with reference to the duty of county auditors is pointedly applicable. Most of the cases as to the conclusiveness of a statutory audit are cited and commented on by AGNEW, J., in Blackmore v. Allegheny Co., 51 Pa. 160, and as he remarks in that case, " It is necessary for the peace and repose of society, that public officers should not be from year to year harassed and investigated by officers, otherwise as is said in Northampton County v. Yohe, 24 Pa. 305, if an annual board may re-open the accounts of two years

past they may on the same principle go back twenty years and upset their doings and thus interminable confusion be introduced instead of statutory system." The same ruling has been followed since in Westmoreland County v. Fisher, 172 Pa. 317, and Commonwealth v. Scanlan, 202 Pa. 250.

The fact that Patterson chose not to object to reaudits of Controller Dechert for the first four years and paid over the additional amount found by that controller, in no way estops him from now objecting to another audit of the same years by a new controller.

While we do not concur with the learned judge of the court below as to the consequence of not filing the audit in court, we do concur with him in his answer to the third reserved point that, " there was presented at the trial no legal proofs of default prior to 11th of September, 1890," and the judgment is affirmed.