## Commonwealth ex rel. v. Gollmar, Sheriff, et al.

*Oliver K. Eaton* and *Charles E. Harrington*, for petitioner.
*Archibald W. Powell* and *Ralph H. Frank*, for respondents.

T. M. MARSHALL, J., June 27, 1932.—In March, 1932, the Controller of Allegheny County, Pa., proceeded to hold certain hearings relating to the accounts of the county commissioners' office for the fiscal year 1931. He summoned a number of witnesses, among them Watson Bowser, who, together with his brother, had done a large amount of work in hauling slag to the county airport.

In the course of said hearings the controller caused a subpœna to be issued directly to the relator, Watson Bowser, and caused said subpœna to be served upon relator on March 29, 1932. This subpœna required the presence of the relator on March 31, 1932, and notified him to produce at said time and place the books, records and papers of Watson Bowser and Watson Bowser & Brother which referred to the work done by the relator and his brother at the county airport. Appearing before the controller, the relator, under advice of counsel, refused to be sworn and refused to produce the books and papers set forth in the subpœna, and the controller directed that the relator be committed for contempt, as a result of which order and commitment relator took out a writ of habeas corpus, which brings this proceeding before the Court of Common Pleas of Allegheny County.

Testimony on habeas corpus taken in open court, by admission, conclusively established that:

(a) The controller has filed his annual report under The General County Law of May 2, 1929, P. L. 1278, for the fiscal year 1931;

(b) Said controller did audit and decide on all bills, claims and accounts of Watson Bowser, Watson Bowser & Brother, contractors, who were employed by the County Commissioners of Allegheny County to perform the work of filling and preparing, in the course of construction, the Allegheny County municipal aviation field;

(c) All of the accounts having been previously audited and settled are embraced in said controller's annual report;

(d) There is no present claim or demand of said contractor now before the auditor, the same having been audited and paid during the fiscal year 1931;

(e) The relator, under advice of counsel, refused to submit his accounts for inspection and re-audit, under subpœna at controller's hearing Monday, April 4, 1932, for the reason that said controller, at said time, was not acting under any statutory authority, but that said controller was acting ultra vires;

(f) Allegheny County is a county of the second class, and Robert G. Woodside is the controller thereof, duly acting and qualified.

The controller having filed his report and no appeal having been taken within sixty days, has such controller the authority to call a witness to testify?

There is no question that the controller filed his report January 21, 1932, for the year 1931 and that said report did audit and decide on all bills, claims and accounts of the relator, Watson Bowser and Watson Bowser & Brother.

No question was raised as to the appropriateness of the proceedings, to wit, the writ of habeas corpus.

We find that neither the record nor evidence taken at the hearing upon the habeas corpus writ disclosed any evidence of fraud on the part of Watson Bowser or Watson Bowser & Brother.

It is true counsel for controller claims that the testimony taken before the controller, having been produced as a result of a writ of certiorari issued upon the relator, is properly before the court. It is argued that this testimony can be examined for the purpose of seeing whether the court has jurisdiction and that any evidence of fraud shown in said report should be before the court.

We hold otherwise, inasmuch as we all distinctly remember that counsel for the relator offered the testimony taken before the controller in evidence, but that counsel for the controller objected to the admission of the same and it was finally offered solely for the purpose of showing that the controller did take testimony and that the same was transcribed, and for that purpose only.

The question, therefore, narrows down largely to what authority does the controller have in respect to compelling witnesses to testify when the controller's report has been filed and is unappealed from?

Prior to 1861 the disbursement of county funds was subjected to the scrutiny of county auditors temporarily employed.

In 1861 the legislature passed an act which applied to Allegheny County only which replaced the above system, and which served as a system of fiscal control without change until the present time, being reënacted for the larger counties by the Act of June 27, 1895, P. L. 403; for the smaller counties by the Act of May 6, 1909, P. L. 434; for all counties by The General County Law of May 2, 1929, P. L. 1278, 16 PS § 1, et seq., which provides, in section three, that so far as its provisions are the same as those of existing laws, they shall be construed as a continuation of such laws and not as new enactments.

The county controller is given the following broad powers under the Act of May 2, 1929, P. L. 1278, sec. 341, 16 PS § 341:

"The controller shall have a general supervision and control of the fiscal affairs of the county, and of the accounts and official acts of all officers or other persons who shall collect, receive or distribute the public moneys of the county, or who shall be charged with the management or custody thereof. He may at any time require from any of them, in writing, an account of all moneys or property which may have come into their control. He shall, immediately on the discovery of any default or delinquency, report the same to the commissioners and the court of common pleas of the county, and shall take immediate measures to secure the public moneys or property and remove the delinquent party, if in office, and not removed by the commissioners."

We can readily see from the above excerpt from the statute that the controller is the fiscal control officer of the county with quasi-judicial functions.

This can be more readily observed when we examine section 375 of the same act (16 PS § 375), which reads:

"If any person appearing before the controller or auditors for examination shall refuse to take oath or affirmation, or, after having been sworn or affirmed,

shall refuse to make answer to such questions as shall be put to him by the controller or auditors touching the public accounts, or the official conduct of any public officers, such persons so refusing may be committed by the controller or auditors to the county jail, by warrant under his or their hand and seal, directed to the sheriff, or any constable of the county, setting forth particularly the causes of such commitment, until he shall submit to be sworn or affirmed, or to make answers to such questions, or be otherwise legally discharged."

The relator very forcibly argues that the controller, having filed his account for the fiscal year 1931, has exhausted his power to inspect vouchers, scrutinize accounts and hear witnesses and has relegated the entire matter to the court of common pleas. In the absence of any appeal from said annual report or exceptions filed thereto, the controller cannot, on his own motion, constitute himself an official investigator by holding public hearings under the guise of investigating a subject involving accounts, which he has already audited together with the county commissioners and various road departments of the county, virtually seeking to surcharge himself as controller and the county commissioners in a manner not authorized by statute.

Relator's counsel further contends that said controller cannot attack his report collaterally and cannot re-audit his account once it is filed.

Relator's counsel has cited a number of authorities to support the above contention, and, after careful consideration of the above authorities, we agree in most respects with the relator's position. The cases referred to state that the report of the controller, once filed, has the effect of a judgment against the real estate of the accounting officer. Sixty days are allowed for an appeal, and if none be taken execution is to issue as upon judgments recovered in the usual courts of law.

Counsel for the controller takes the position that the authorities above referred to are applicable only to an officer of the county whose books are subject to examination by the controller, and that an individual who deals with the county, such as a contractor, cannot invoke the doctrine of law relied upon by the relator.

We cannot agree with this argument and we have not been referred to a single case which bears out any such contention. It is true that one who stands in the position of this relator, viz., a third party, may in some sense appear as a stranger to the fiduciary relation which exists between the county and its officers, but it seems to us that the same reason which makes the law applicable to a county officer makes it applicable to a contractor such as the relator. Every payment made to him is subject to the same scrutiny as that of a county officer. He can unquestionably be compelled by the controller at any time before his report is filed and during the pendency of the work to come in and be examined or questioned.

The controller has advanced another argument which we consider contains much more merit. It is argued that any conclusive character which may otherwise attach to a controller's report is subject to be upset on a showing of fraud. It is claimed that the controller's procedure in the way of an investigation is the only practical way to ascertain, for his preliminary purpose, whether or not such fraud existed.

In our opinion, there is no question that upon a showing of fraud the controller's report is not conclusive.

We cite Zeigler's Petition, 207 Pa. 131. A portion of the syllabus reads:

"County commissioners should be given leave to appeal nunc pro tunc from a report of county auditors settling the account of a county treasurer where upon a proper hearing it is made to appear that the report was obtained by fraud

practiced by the county treasurer, and that such fraud was not discovered until after the time allowed for the appeal had passed."

The same position is found inferentially in Com., to use, *v.* Patterson, 206 Pa. 522.

We cite Lackawanna County's Appeals, 296 Pa. 271: "Where a county official appropriates to his own use money belonging to the county, and does not make a report thereof to the county controller, as required by section 37 of the Act of April 15, 1834, P. L. 537, 543, such conduct is fraud upon the public, entitling the county, upon proper application in due course, to appeal nunc pro tunc from the controller's report upon the accounts of such officer. . . .

"Ordinarily, a statute of limitations, which has been tolled by reason of the fraud of the defendant, begins to run from the time of the discovery of the fraud, and will operate as a conclusive bar, if the prosecution of the claim is not begun until after the full statutory period has elapsed from the date of its discovery.

"By analogy, the rule cited in the immediately preceding syllabus applies where the party against whom an order, judgment or decree has been entered, fails to appear within the statutory period allowed therefor, because of the fraudulent conduct of the other party in relation to the order, judgment or decree itself; but it has no applicability where the fraud has no relation to the matter of appeal, but only to the proceeding leading up to the order, judgment or decree, and the statute does not provide any period of time in relation to appeal under such circumstances."

It is the opinion of the majority of the court that the above authorities are not applicable, inasmuch as no one has charged the relator or the county commissioners with fraud and there is absolutely nothing before the court to indicate that the investigation conducted by the controller was for any other purpose than to attempt to obtain evidence against someone. Although the controller has exceptionally broad powers, we do not believe that he has the authority to interrogate witnesses after his report has been filed, unless he makes a specific charge of fraud. The individual rights of citizens must be respected. In addition to this, we do not believe that the court has the power to assume that anyone is guilty of fraud without having evidence before it that such is the fact. There is also some question in our mind as to whether the controller has the power to commit for contempt, but it is not necessary for us to pass on that question.

By holding as we do that the relator must be discharged, we wish to emphasize our position that the controller is not without redress. If he has evidence of fraud on the part of the county commissioners, or on the part of the relator, he may petition the court, asking that his report be opened. A taxpayer's bill may be filed, as has been done in this particular case. The before-mentioned remedies do not violate the rights of citizens and compel them to testify and produce their books without having a specific charge made against them, which was not done in this proceeding.

The writer of this opinion dissents, although he agrees with the opinion of the majority in most respects. The minority opinion assumes that the county controller is acting from proper motives; that the controller must have some purpose for starting his investigation. If his investigation does not show fraud, the relator is not hurt. If it does show fraud, then, under the authority of the above cases, the controller could appeal nunc pro tunc from his report, as has been done on a number of occasions.

We have no reason to believe that the controller is endeavoring to surcharge anyone, nor that he wishes to re-audit his account, but we think that if a controller has reason to believe that an investigation is necessary, then he has the

authority, as above shown, to examine witnesses, and if fraud is then shown he can proceed against anyone who dealt with the county or with any officer who has been unfaithful in his trust.

Fraud does not unearth itself. It is only brought to the surface as a result of investigation. Someone must start the investigation, and we believe the controller has this right under the Act of 1929. The right to investigate does not necessarily mean that he has the right to surcharge or re-audit.

The question before us, therefore, comes to his right to investigate and see if any fraud has been practiced upon the county, and, if so, under the authorities of our own courts, we believe there is no question of the controller's right either to ask that his report be opened as any other judgment or to appeal nunc pro tunc. To hold otherwise would be to discourage a conscientious public official for being on the constant alert to detect irregularities and fraud, and would put a premium on carelessness. On this point we all agree.

It is the dissenting judge's opinion that a controller's report is never conclusive in so far as it may be opened by a showing of fraud. On this point also we agree, but the dissenting judge believes that the controller's power to investigate, under the very broad powers given him by statute, do not end with the filing of his report, and this is where our difference of opinion arises.

T. M. MARSHALL, J., dissents.

*Order.*—And now, to wit, June 27, 1932, relator discharged.

From William J. Aiken, Pittsburgh, Pa.