House of Refuge, Appellant, *v.* Luzerne County.

215    429
f 35 SC 370

*Constitutional law—Title of act—House of Refuge—Act of May* 11, 1901, *P. L.* 158.

The Act of May 11, 1901, P. L. 158, entitled "An Act to provide for the maintenance and instruction of children committed to houses of refuge which are not exclusively under state control," which provides that one-half of the expense of maintenance and instruction shall be borne by the county from which a child is received is constitutional. The fact that there is no reference in the title to the provision that the counties are to bear such expense, is immaterial, inasmuch as the counties already bore the expense under the Act of March 2, 1827, P. L. 76, which was not repealed by the unconstitutional Act of January 10, 1867, P. L. 1371.

Argued April 9, 1906.  Appeal, No. 317, Jan. T., 1904, by plaintiff, from order of C. P. Luzerne Co., June T., 1902, No. 165, dismissing exceptions to report of referee in case of House of Refuge v. County of Luzerne.  Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to report of Joseph D. Coons, Esq., referee.
The opinion of the Supreme Court states the case.

*Error assigned* was order dismissing exceptions to report of referee.

*John G. Johnson,* with him *N. Dubois Miller* and *H. A. Fuller,* for appellant.—The provisions of the Act of May 11, 1901, P. L. 158, follow naturally and inevitably from its avowed purpose as stated in the title, which clearly expresses its purpose. The title is therefore not misleading and the act is constitutional: Com. v. Curren, 9 Phila. 623 ; Commissioners v. Hall, 7 Watts,

290; McCalmont v. Allegheny County, 29 Pa. 417; Venango County v. Durban, 3 Grant, 66; Allegheny County v. Watt, 3 Pa. 462; Lancaster County v. Mishler, 100 Pa. 624; Com. v. Green, 58 Pa. 226; Allegheny County Home's Case, 77 Pa. 77; Hays v. Cumberland County, 186 Pa. 109; Road in Phœnixville, 109 Pa. 44; Quinn v. Cumberland County, 162 Pa. 55; Dailey v. Potter County, 203 Pa. 593; Stegmaier v. Jones, 203 Pa. 47.

*William S. McLean,* for appellee.

OPINION BY MR. JUSTICE POTTER, May 24, 1906:

The House of Refuge brought suit against Luzerne county to recover the sum of $4,396.32 with interest, being one-half the expense of maintaining and instructing certain children received from that county, who were committed to the House of Refuge, and became inmates thereof.

The action was based upon the Act of May 11, 1901, P. L. 158, entitled, " An act to provide for the maintenance and instruction of children committed to Houses of Refuge which are not exclusively under state control." And it provides that whenever a child shall be committed to a house of refuge which is not exclusively under state control and becomes an inmate thereof, one-half of the expense of maintaining and instructing such child shall be borne by the county from which the child shall have been received, and the remaining half shall be paid out of appropriations made from time to time by the state. The act further provides a method of presenting the bills and collecting the amount due by the several counties. The case was referred to a referee, who found as a fact that if the plaintiff is entitled to recover at all, the judgment should be for $4,339.33, with interest. But he reached the conclusion of law that the Act of May 11, 1901, P. L. 158, was unconstitutional because the subject of the act, or at least so much of it as was supposed to place an additional burden on counties, was not clearly expressed in its title, and therefore the plaintiff was held not to be entitled to recover. Exceptions to the referee's report were overruled by the court, and judgment entered for defendant, from which judgment plaintiff has appealed.

The sole question raised by this appeal and assignments of error is the constitutionality of the act of 1901. The House of Refuge, as originally incorporated by Act of March 23, 1826, P. L. 133, entitled " An act to incorporate the subscribers to the articles of association for the purpose of establishing and conducting an institution for the confinement and reformation of youthful delinquents, under the title of the house of refuge," was an association of citizens, as stated in the preamble, " formed in the city and county of Philadelphia for the humane and laudable purpose of reforming juvenile delinquents and separating them from the society and intercourse of old and experienced offenders, with whom, within the prisons of said city, they have been heretofore associated, and thereby exposed to the contamination of every species of vice and crime."

The act of 1826, sec. 6, empowered the managers at their discretion to receive into the House of Refuge " such children who shall be taken up or committed as vagrants, or upon any criminal charge, or duly convicted of criminal offenses, as may be, in the judgment of the court of oyer and terminer, or of the court of quarter sessions of the peace, of the county, or of the Mayor's court of the city of Philadelphia, or of any alderman or justice of the peace, or of the managers of the almshouse and house of employment, be deemed proper objects."

This act was limited to Philadelphia, and no provision was made for the maintenance of inmates, as no buildings had yet been erected for their reception.

By the Act of March 2, 1827, P. L. 76, entitled " an act to endow the ' House of Refuge ' and for other purposes therein mentioned," an appropriation of $10,000 was made from the state treasury and the county of Philadelphia was also required to make appropriations to the extent of $35,000 for the purposes of the institution. The act further provided, by sec. 4, that the managers should receive " such children who shall be convicted in the court of oyer and terminer or quarter sessions of any county, except the county of Philadelphia, or Mayor's court of any city except the city of Philadelphia, of any offense which under the existing laws would be punished by imprisonment in the penitentiary, as may be in the judgment of said courts deemed proper objects for the House of Refuge; and the children so received shall be clothed, main-

tained and instructed by the said managers at the proper expense of the proper county, and the accounts of the said children shall be kept by the said managers in the same manner that the accounts of convicts in the penitentiary are now directed to be kept by the inspectors thereof."

The Act of April 10, 1835, P. L. 133, broadened the class very considerably, so as to include: "1. Infants committed by an alderman or justice of the peace, on the complaint and due proof made to him by the parent, guardian or next friend of such infant, that, by reason of incorrigible or vicious conduct such infant has rendered his or her control beyond the power of such parent, guardian or next friend, and made it manifestly requisite that, from regard for the morals and future welfare of such infant, he or she should be placed under the guardianship of the managers of the House of Refuge. 2. Infants committed by the authority aforesaid, where complaint and due proof have been made that such infant is a proper subject for the guardianship of the managers of the House of Refuge, in consequence of vagrancy, or of incorrigible or vicious conduct, and that from the moral depravity, or otherwise, of the parent or next friend in whose custody such infant may be, such parent or next friend is incapable or unwilling to exercise the proper care and discipline over such incorrigible or vicious infants. 3. Infants committed by the courts of this commonwealth in the mode provided in the act to which this is a supplement."

It will be noticed that by the 4th section of the act of March 2d, 1827, the cost of maintenance of the children was placed upon the county from which they were sent. No change was attempted in this respect until the passage of the Act of January 10, 1867, P. L. 1371, which is entitled " A further supplement to an act entitled ' An act to incorporate the subscribers to the articles of association for the purpose of establishing and conducting an institution for the confinement and reformation of youthful delinquents under the title of the House of Refuge,' passed March 23, 1826." Turning to section 3 of this act of 1867, we find that it provides " That the fourth section of a further supplement to an act, entitled (giving title of act of 1826 as above) passed the 2d day of March, 1827, be and the same is hereby repealed." But in

fact the Act of March 2, 1827, P. L. 76, is not, by its title, a supplement to the Act of March 23, 1826, P. L. 133, but is entitled "An act to endow the 'House of Refuge' and for other purposes therein mentioned." The reference to it, therefore, in the act of 1867, as "a further supplement," etc., would seem to be clearly erroneous.

The section which it was sought to repeal by the act of 1867, was not contained in the act mentioned in the title to the repealing bill. It is contained in another and later act. The amendment to the constitution, forbidding the passage of any bill containing more than one subject, which should be clearly expressed in the title, was adopted in 1864, and was in force at the time of the passage of the act of 1867. The title of this act gives no notice whatever of any intention to repeal the 4th section of the act of 1827. The situation is analogous to that in Ruth's App., 10 W. N. C. 498, and the principle there set forth is applicable here. It was there held by the court below, and affirmed by this court, that the Act of April 7, 1877, P. L. 83, entitled, "A further supplement to an act to incorporate the city of Scranton," which provided for the repeal of a clause in that act relating to the collection of taxes, was unconstitutional and void, because it did not clearly express the subject thereof in the title.

The court below there said (p. 500) : "If the title clearly expressed the subject of the bill, it should be read in this manner : 'A further supplement to an act to incorporate the city of Scranton and to repeal the 42d section of the act approved the 23d day of April, 1866, exempting the said city from the payment of county tax." In that case the provision sought to be repealed was contained in the act to which the repealing bill was a supplement, and even then the title was held defective. Much more, then, does it fall short, when as here the provision to be repealed is not found in the act of 1826, to which the act of 1867 refers, but is found in another statute, that of March 2, 1827. We are brought then to the conclusion that the repealing act of 1867, is unconstitutional and void, by reason of the failure to give any notice in its title of an intention to repeal the 4th section of the act of 1827.

That section, therefore, stands unrepealed, and, if so, then counties from which children were committed to the House of

Refuge were already liable for their maintenance when the act of 1901 was passed. That act, therefore, did not impose any additional liability upon the counties, but on the contrary relieved them of one-half of the burden to which they had been subject before that time.

We are therefore of opinion that the learned court below erred in holding that the act of May 11, 1901, is unconstitutional. The judgment is reversed, and is ordered to be entered for the plaintiff in the amount found to be due by the referee.