## Commonwealth v. Shelley et al.

*Arthur Markowitz* and *Randolph C. Ryder*, Deputy Attorney General, for Commonwealth.

*Luria & Still* and *Carl R. May*, for defendant.

SHERWOOD, P. J., May 16, 1950.—This matter is before the court on an appeal from the judgment entered by Alderman Edward L. Showalter of the City of York against Katie B. Shelley.

Katie B. Shelley, one of the defendants, is an individual proprietor of a hotel in York Haven, York

County, Pa., which hotel is operated under the name of Commercial Hotel. The Commercial Hotel operates a dining room or restaurant in which it serves food to the general public.

On December 17, 1948, one H. C. Gibson was employed as a food inspector for the Bureau of Foods and Chemistry of the Pennsylvania Department of Agriculture and while acting in that capacity he visited the business establishment of Mrs. Shelley in York Haven on that date. Mrs. Shelley did not have a license to manufacture or sell oleomargarine, nor did she display in any way on the walls of the Commercial Hotel or by the use of table placards or otherwise that she was engaged in the manufacturing or sale of oleomargarine or that oleomargarine was used and served to customers of the Commercial Hotel. However, Mrs. Shelley had in her possession a pound or two of oleomargarine which was artificially colored by her and used in the kitchen of the Commercial Hotel for cooking purposes as an ingredient of some of the food served to the public in the Commercial Hotel's dining room.

On the basis of these facts Inspector Gibson instituted proceedings before Alderman Showalter against Mrs. Shelley for violating the Oleomargarine Law of June 30, 1947, P. L. 1154, 31 PS §800.1. The basis of the action before the alderman was on the facts alleged in an "Information for Prosecution" furnished to Alderman Showalter by Inspector Gibson. On the basis of this information warrants were prepared by the alderman, and in accordance with the request of Inspector Gibson, the alderman directed the constable to read to Mrs. Shelley the warrant for her arrest, but not to make an actual arrest. No arrest was made and Mrs. Shelley appeared at the hearing before Alderman Showalter with her legal counsel.

At the time of the hearing Alderman Showalter found Mrs. Shelley guilty of violating the Oleomarga-

rine Law and sentenced her to pay a penalty of $100 and from this action of the alderman an appeal was taken to the Court of Common Pleas of York County.

At the time of the hearing before this court, it was stipulated by counsel for the Commonwealth of Pennsylvania and the attorneys representing the several defendants in the above-captioned cases that the testimony heard on the appeal of Mrs. Katie Shelley and the facts in her case were substantially the same as in the cases involving the other six defendants, and it was further agreed that any decision rendered in the Shelley case would be deemed to be binding in the six other cases.

The issues involved are as follows:

1. Were the proceedings before the alderman in this case a nullity?

2. Does the Court of Common Pleas of York County have jurisdiction to pass on the validity of the proceedings before the alderman in this case?

3. Did defendant violate the provisions of the Oleomargarine Law of June 30, 1947, P. L. 1154, 31 PS §800.1?

Were the proceedings before the alderman in this case a nullity? The proceedings before Alderman Showalter in this case were a complete nullity and of no legal consequence. Section 7 of Pennsylvania's Oleomargarine Act provides as follows:

"Every person, firm or corporation, and every officer, agent, servant, and employee of such person, firm or corporation, who shall manufacture, sell or offer or expose for sale, or have in possession with intent to sell oleomargarine, butterine or any similar substance in violation of any of the provisions of this act, or who shall sell oleomargarine, butterine or any similar substance as or for butter, or shall fail to keep a book in accordance with the last preceding section, or who shall in any other respect violate any of the provisions of this act, shall for every such offense forfeit and pay

the sum of one hundred dollars, which shall be recoverable with the costs as debts of like amount are by law recoverable, and justices of the peace and aldermen throughout this Commonwealth, shall have jurisdiction to hear and determine all actions for recovery of said penalties, with the right to either party to appeal to the court of common pleas, as provided in existing laws in suits for penalties; and all penalties imposed and recovered under the provisions of this act shall be paid to the department and by it immediately paid into the State Treasury."

Section 8 of the same act further provides:

"In addition to the above penalty, every person, firm or corporation and every officer, agent, servant or employee of such person, firm or corporation who violates any of the provisions of this act shall also be guilty of a misdemeanor, and upon conviction thereof shall be punished for the first offense by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for not more than three months or both, at the discretion of the court, and upon conviction of any subsequent offense shall be punished by a fine of not less than five hundred dollars nor more than one thousand dollars, and by imprisonment in the county jail for not less than six months nor more than twelve months."

Sections 7 and 8 of the act set forth the full and complete penalties which may be imposed for violation of the provisions of the Oleomargarine Law. These sections clearly provide for two separate and distinct penalties; one is civil in its nature and is the only type of penalty which a justice of the peace or alderman may impose; the other is criminal in its nature and makes the violation of the act a misdemeanor which automatically takes it out of the hands of the justice of the peace court. Whatever jurisdiction an alderman has under the act it must be, under the specific language of section 7 civil in its nature. Accordingly,

when the alderman in this instance accepted the food inspector's "Information for Prosecution" and forthwith prepared and issued warrants for the arrest of the defendant, he was acting without one iota of authority under the law. He further continued this illegal operation when he found defendant guilty of violating the law and imposed upon her a fine of $100. There can be no doubt that everything that happened in the proceeding before the alderman was without any basis in the law and of necessity was a complete nullity. Section 7 of the act spells out the civil jurisdiction of the alderman, but nowhere in the language of the law is the alderman given any criminal jurisdiction.

As stated by Chief Justice von Moschzisker in the case of Commonwealth v. Hall, 291 Pa. 341, "When a judge exercises a power not conferred upon him by law, his act is more than a mere irregularity, which can be waived by defendant; it is a nullity."

Does the Court of Common Pleas of York County have jurisdiction to pass on the validity of the proceedings before the alderman in this case? It is conceded that the usual and accepted method of raising the question of defective proceedings before a justice of the peace is by a writ of certiorari. This point of law has been passed on many times by Pennsylvania courts: Lehighton Borough v. Ruth, 7 Dist. R. 426; Brown v. Erie Railroad Company, 8 D. & C. 658; Commonwealth v. Ronan, 53 Montg. 170. It is likewise conceded that in a given case the party dissatisfied with a judgment of the justice of the peace cannot take both an appeal and a certiorari: Teter v. Cook, 2 Pa. C. C. 171; Russell v. Shirk, 3 Pa. C. C. 287; Hibbert v. Scull, 9 Del. Co. 190, 17 York 167. At the time of the hearing before the court the question was raised as to whether or not defendant by taking an appeal as provided for in section 7 of the Oleomar-

garine Act had not thereby waived any and all procedural defects which could or should have been raised by a writ of certiorari. The answer to this question is that, while the taking of an appeal from the judgment of a justice of the peace does amount to a waiver of any and all procedural defects in the proceedings before the justice of the peace, the taking of such an appeal does not and cannot amount to a waiver of jurisdiction over the subject matter. Waiver may cure irregularities but it cannot supply the lack of the essentials to jurisdiction: Commonwealth ex rel. Mees v. Mathieu, II, 107 Pa. Superior Ct. 261. Objections to the jurisdiction of a court over the subject matter, as distinguished from the objection to its authority over the parties, cannot be waived, nor jurisdiction obtained by acquiescence: Lewisburg Bridge Co. v. Union Co., 232 Pa. 255; English v. English, 19 Pa. Superior Ct. 586; Commonwealth, to use, v. Hughes, Executor, et al., 25 D. & C. 210.

Accordingly, the voluntary appearance of defendant before the alderman in this case, her participation in the hearing and the taking of the appeal may have and did constitute the waiver of the question of jurisdiction over her person and amounted to a cure of certain technical errors evident in the transcript from the alderman, but such action did not and cannot amount to a conferring on the justice of the peace criminal jurisdiction which the Oleomargarine Law does not grant: Westmoreland County v. Fisher, 172 Pa. 317; Moyer v. Moyer, 14 Schuyl. 312.

The question of whether or not the alderman had jurisdiction to do what he did in this case is properly before this court on appeal for the very valid reason that no action on the part of defendant would make her capable of waiving the jurisdictional question. To hold otherwise would in effect say that two wrongs do in fact make a right. In other words that the

wrong of the alderman in conducting a criminal proceeding where he had no jurisdiction to do so was made right by defendant's wrong in taking an appeal to the court of common pleas rather than by raising the issue via a writ of certiorari. It follows that the judgment of the alderman must be reversed and set aside.

Did defendant violate the provision of the Oleomargarine Law of June 30, 1947, P. L. 1154, 31 PS §800.1? Article 3, sec. 1, of the Pennsylvania Constitution provides that: "No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either house, as to change its original purpose." Article 3, sec. 3, of the Constitution provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, *which shall be clearly expressed in its title.*"

Pennsylvania's Oleomargarine Law of 1947, P. L. 1154, 31 PS §800.1, as enacted had the following title:

"An act *To prohibit the manufacture and sale of oleomargarine* or butterine and other similar products when colored in imitation of yellow butter; to provide for license fees to be paid by manufacturers, wholesale and retail dealers, and by proprietors of hotels, restaurants, dining-rooms, and boarding-houses; *for the manufacture or sale of oleomargarine,* butterine or other similar products not colored in imitation of yellow butter; to regulate the manufacture, sale and advertising of oleomargarine, butterine or other similar products, not colored in imitation of yellow butter; and prevent and punish fraud and deception in such *manufacture, sale and advertising* as an imitation butter; to prescribe penalties; and punishment for violation of this act and the means and method of procedure for its enforcement; to regulate certain matters of evidence in such procedure; and to prescribe certain powers and duties of the Department of Agriculture."

It has been stated repeatedly by our courts that the purpose of article 3, sec. 3, of the Pennsylvania Constitution was to require that the title of any law enacted by our legislature must be such as to give notice to the legislators, and others interested, of the subject of the act, so that they may know or be put upon inquiry as to the act's provisions and their effect: Commonwealth v. Samuels, 163 Pa. 283; House of Refuge v. Luzerne County, 215 Pa. 429; Guppy v. Moltrup, 281 Pa. 343; Knowles' Estate, 295 Pa. 571. And while it has been repeatedly said that the title of a bill need not be a complete index of its contents, it has never been doubted that the subject of proposed legislation must be so expressed in the title of the bill as to give notice of its purpose to members of the legislature and others specially interested: Com. v. Green, 58 Pa. 226; Sewickley Borough v. Sholes, 118 Pa. 165; Hood v. Norton, 202 Pa. 114; Com. v. DePofi, 362 Pa. 229; Harvey v. Ridley Township, 350 Pa. 210; Fedorowicz v. Brobst, 254 Pa. 338; Montgomery v. Wicks, 146 Pa. Superior Ct. 219.

A review of the title to the Oleomargarine Act of 1947 will indicate clearly that its purposes were as follows: First, to prohibit the manufacture and sale of colored oleomargarine; second, to license the manufacture or sale of uncolored oleomargarine and, third, to regulate the manufacture, sale and advertising of uncolored oleomargarine. An interested person reading the title of this act would be put on notice that the law prohibited the manufacture and sale of colored oleomargarine, licensed the manufacture and sale of uncolored oleomargarine and regulated the manufacture, sale and advertising of uncolored oleomargarine and nothing more. By a reading of the title of the law, no one could ever be warned or advised that it intended in any way to regulate or prohibit the *use* of oleomargarine, colored or uncolored.

In the act itself section 2 carries out the purpose as expressed in the title of the act insofar as it provides for the manufacturing and selling of uncolored oleomargarine only by persons properly licensed to do so. Section 3 provides for the procedure to be followed by a person desiring to be licensed by a manufacturer or seller of uncolored oleomargarine. Section 3 goes on to provide that, even though one is issued a license to manufacture and sell uncolored oleomargarine, "the said license shall not authorize the manufacture, *use*, sale, exposing for sale, or having in possession with intent to sell, any oleomargarine, butterine or any similar substance made or colored so as to look like yellow butter as herein provided." Thus, we have a law which on the face of its title appears only to prohibit the manufacture and sale of uncolored oleomargarine and to license and regulate the manufacturing and selling and advertising of colored oleomargarine, actually attempting to prohibit the *use* of colored oleomargarine products. The inclusion of the provision against the use of colored oleomargarine in the 1947 Oleomargarine Law is particularly significant when you consider that the 1947 Act is merely the latest version of a law which has been on our statute books for many, many years. In fact, except for some minor amendments of no significance to this case, the 1947 Oleomargarine Law appears to be a reënactment of the Act of 1901, P. L. 327, 31 PS §800. We use the words "appears to be" advisedly because it is significant that, while the word "use" was inserted into section 3 when the Oleomargarine Law was enacted by the 1947 session of our legislature, no change was made to the title of the act to indicate that henceforth the legislature intended to not only prohibit the manufacture and sale of colored oleomargarine in this Commonwealth but also its use.

It is also significant to note that unlike the 1901 version of the Oleomargarine Law, the 1947 Act endeavors to regulate the advertising of as well as the manufacturing and selling of oleomargarine. However, the title to the act was amended in 1947 to properly indicate that the advertising of oleomargarine was also subject to regulation. *No such amendment was made to the title to indicate a regulation of the use of colored oleomargarine within this Commonwealth.* On its face, the 1947 Oleomargarine Act is clearly unconstitutional insofar as it endeavors to prohibit the *use* of colored oleomargarine: In re Road in Borough of Phoenixville, 109 Pa. 44; Dorsey's Appeal, 72 Pa. 192; Quinn v. Cumberland County, 162 Pa. 55; Commonwealth ex rel. Reno v. Berryman et al., 345 Pa. 222.

Defendant in this case admitted that she did not have a license to manufacture and sell uncolored oleomargarine as required by the Oleomargarine Act of 1947. She never applied for such a license for a good and valid reason, namely, that at no time was she engaged in the manufacturing or selling of uncolored oleomargarine. At the time of the hearing, counsel for the Commonwealth stated that "The Commonwealth charges there is a license required to be had by people who handle oleomargarine, and six out of the seven (defendants) there had no license."

There has never been a law in this Commonwealth requiring persons who "handle" oleomargarine to be licensed. The only persons who can be issued an oleomargarine license by the Department of Agriculture are those persons actively engaged in the manufacturing or selling of uncolored oleomargarine. Defendant never having manufactured or sold uncolored oleomargarine could not properly have been issued a license had she applied for one.

The Commonwealth further charged at the time of the hearing: "The act further generally provides

where oleomargarine is served there is a duty upon the server to place placards, signs or menu cards thereby notifying the public that they are using oleomargarine whether with or in substitution of butter." The specific provision of the act to which counsel for the Commonwealth referred to was the final sentence of section 4. Section 4 of the act provides as follows:

"After obtaining the license required by this act the person, firm or corporation obtaining the same shall, before beginning any business under the said license, hang up and display in a conspicuous place on the walls of the room or store in which the oleomargarine, butterine or other similar substance is manufactured, sold or exposed for sale, the license so obtained, as aforesaid. Every proprietor of a hotel, restaurant, dining-room, or boarding-house shall also have placed upon every counter or table at which food, meals or refreshments are served to customers a placard or menu-card, plainly printed, stating that oleomargarine is used and served to customers."

The first sentence of the section requires that a licensee who obtains a license shall be required to hang up and display in a conspicuous place on the walls of the room or store in which the oleomargarine, butterine or other similar substance is manufactured, sold or exposed for sale, the license so obtained. From this first sentence of the section it would appear without question that the only persons required to display such a license would be such persons who are actually engaged in the manufacturing or sale of uncolored oleomargarine. However, section 4 then concludes with its very confusing final sentence: "Every proprietor of a hotel, restaurant, dining-room, or boarding-house shall also have placed upon every counter or table at which food, meals or refreshments are served to customers a placard or menu card, plainly printed, stating that oleomargarine is *used and served to customers.*" We

cannot read this final sentence of section 4 to mean what it actually says. But whether the sentence means what it actually says or not, it is the second and final instance within the Oleomargarine Law where an attempt is made to regulate the *use* of oleomargarine by an act which, according to its title, is intended to regulate manufacturing, sale and advertising of uncolored oleomargarine.

Defendant did not manufacture, sell, advertise or serve oleomargarine, colored or uncolored. What she did was to use colored oleomargarine in the cooking of food which was served in her hotel dining-room. All the defendant did was to use colored oleomargarine as one of the ingredients in the cooking of meals which she served to the public. It is doubtful, even if the title to the act were perfected, whether the term "use" in the act could be construed to include use in cooking as distinguished from being used on the table as a spread for bread in lieu of butter. But there is no need for the court to concern itself with the scope or meaning of the term "use," "used" and "served" as it appears in the Oleomargarine Law because insofar as the act attempts to regulate in any way the use and serving of oleomargarine it is unconstitutional and of no effect for the reasons set forth above.

We conclude that the appeal of defendant in this case must be sustained and the judgment of Alderman Edward L. Showalter set aside and reversed; first, because the criminal proceeding before the alderman was a nullity, having no basis or authority in the Oleomargarine Act of 1947; and second, because by its title the Oleomargarine Act of 1947 is an act to prohibit the manufacturing or selling of colored oleomargarine and not to regulate the manufacturing, sale and advertising of uncolored oleomargarine, and is unconstitutional and void insofar as it attempts to

regulate the manner in which oleomargarine, colored or uncolored, can be used.

And now, to wit, May 16, 1950, it is ordered, adjudged and decreed that the appeal of Katie B. Shelley is sustained and that the judgment entered by Alderman Edward L. Showalter on January 25, 1949, in favor of the Commonwealth of Pennsylvania and against defendant, Katie B. Shelley, is reversed and set aside.